414 So.2d 726 (1982)
STATE of Louisiana
v.
Bessie L. BROWN.
No. 81-KA-2496.
Supreme Court of Louisiana.
May 17, 1982.
Rehearing Denied June 18, 1982.
*727 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Edwin O. Ware, III, Dist. Atty., Edward E. Roberts, Jr., Donald Johnson, Asst. Dist. Attys., for plaintiff-appellee.
Eugene P. Cicardo, of Law Offices of Eugene P. Cicardo, James S. Gravel, of Gravel, Schley & Van Dyke, Alexandria, for defendant-appellant.
BLANCHE, Justice.[*]
Defendant was indicted by a grand jury in Rapides Parish for the offense of manslaughter. At arraignment, she entered a plea of not guilty and not guilty by reason of insanity. A sanity hearing was conducted and the trial court determined defendant had the mental capacity to proceed to trial. After a bench trial, defendant was found guilty as charged and sentenced to six years at hard labor. She appeals this conviction based on eleven assignments of error; however, assignments of error numbers 3, 4, 5, 6, 7, 9 and 10 were neither briefed nor argued and are, therefore, deemed abandoned. State v. Blanton, 325 So.2d 586 (La.1976).

Assignment of Error Number 1
In this assignment defense counsel contends the trial court erred in denying his motion for a continuance in order to assemble a new petit jury venire. This motion was made when defense counsel learned from the clerk that the seal on the petit jury venire box was broken.
The provision governing safekeeping of the venire list is C.Cr.P. art. 416, which provides in pertinent part as follows:
The commission shall place the slips bearing the names of the petit jury venire for each week in a separate envelope. It shall seal each envelope and write thereon the words "Petit Jury Venire No. 1," "Petit Jury Venire No. 2," and "Petit Jury Venire No. 3." Each envelope shall be placed in a box labeled "Petit Jury Box."
This provision does not require that the petit jury venire box itself be locked or sealed in any manner. There was testimony indicating the box was customarily sealed; however, the parish jury commission officer stated that the box had been in the possession of one of the judge's new employees who apparently did not know it was usually sealed upon return to the clerk's office. The fact the seal on the box was broken did not necessitate a continuance to assemble a new petit jury venire unless there was an indication that the envelopes themselves had been tampered with.
The trial judge carefully inspected the sealed envelope containing the venire list and found it to be in good order and noted that the seal had not been disturbed in any way. Further, the deputy clerk of court who certified the envelope and signed it across the seal identified her signature and stated that it had not been tampered with.
C.Cr.P. art. 419 is also applicable and provides the following:
A general venire, grand jury venire, or petit jury venire shall not be set aside for *728 any reason unless fraud has been practiced or some great wrong committed that would work irreparable injury to the defendant.
The jurisprudence allocates to the defendant the burden of establishing fraud or that some irreparable injury was caused by the selection process. State v. Liner, 397 So.2d 506 (La.1981); State v. Sheppard, 350 So.2d 615 (La.1977).
There is no indication that fraud was involved and the only injury alleged is that the broken seal influenced defendant's selection of a bench trial instead of a jury trial because of concern that the contents of the box had been tampered with. However, this choice was made after the trial court determined that the integrity of the envelope containing the venire list had not been disturbed; therefore, this argument is not persuasive.
This assignment of error is without merit.

Assignment of Error Number 2
By this assignment defendant alleges the trial court erred in denying her motion for a continuance in order to reconstitute the venire list.
Defendant alleges it was detrimental to the defense when ten male proposed jurors were released by the court without explanation because it resulted in an imbalance of the ratio of men to women in the proposed jurors. To support this contention, it is argued that a number of men, but very few women, hold jobs which carry automatic exemptions; therefore, the release of an additional ten men deprived defendant of the chance to be tried by her peers.
The court is authorized to excuse a person from jury service either prior to or after his selection for the general venire, jury pool or jury wheel if such service would result in undue hardship or extreme inconvenience. The court may take this action on its own initiative or on the recommendation of an official or employee designated by the court. See C.Cr.P. art. 783(B). We have held that a defendant need not be present when the trial judge excuses prospective jurors before his case is called for trial. State v. Edwards, 406 So.2d 1331 (La.1981); State v. Sheppard, supra. The trial court is vested with broad discretion in excusing prospective jurors for undue hardship. State v. Ivy, 307 So.2d 587 (La.1975). This discretion to release prospective jurors in advance of voir dire examination is not to be disturbed unless there is a showing of fraud or collusion resulting in prejudice to the accused. State v. Edwards, supra; State v. Sheppard, supra. The defendant makes no allegation of fraud or collusion nor does the record give any indication of such; therefore, the court's action in releasing the proposed jurors will not be disturbed.
This assignment of error is without merit.

Assignments of Error Numbers 8 and 11
By these assignments the defendant contends the state's evidence was insufficient to establish that the killing was not committed in self defense. A defendant in a homicide prosecution who asserts that he acted in self defense does not have the burden of proof on that issue because the state bears the burden of establishing beyond a reasonable doubt that the homicide was not perpetrated in self defense. State v. Patterson, 295 So.2d 792 (La.1974); State v. Collins, 306 So.2d 662 (La.1975).
R.S. 14:20 reads in pertinent part as follows:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger...
The relevant inquiry on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self defense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Moody, 393 So.2d 1212 (La.1981).
*729 On December 24, 1979 at approximately 3:05 p. m., the Alexandria Police Department received a phone call from the defendant, who informed the police that she had just shot her husband.[1] When the police arrived at their house, they found the defendant in the living room and the body of John Smith on the kitchen floor. She was arrested and taken to the police station. She gave a recorded statement at 4:35 p. m., giving the following account of the events which led to the shooting:
The defendant stated she got off work at the Pitt Grill at 7:00 a. m. and proceeded home after making a quick stop to pick up a six-pack of beer. Later in the morning, she and the victim went out to do some shopping and drinking. After several drinks at a local bar, the victim accused the defendant of sleeping with other men; however, he did not pursue the issue and they left without incident. When they arrived at their house, he allegedly accused her again of sleeping with other men and she stated that he got excited and grabbed her, whereupon she said, "You're not going to hit me no more", and picked up a gun from the table, shooting him four times. When specifically asked if the victim was coming toward her or sitting at the table at the time she shot him, she answered that he was sitting down and started to get up.
At trial, the defendant gave an identical account of the events leading up to the shooting; however, her depiction of the actual shooting varied in two important respects. At trial, she alleged for the first time that, prior to the shooting, the victim hit her in the stomach, which caused her to fall down and he then kicked her. She also contended that her original statement that the victim was seated at the time she shot him was in error and claimed that he was not sitting down when she fired the gun.
The defendant presented evidence to establish that the victim had beaten her in the past and also offered the testimony of Dr. Daniel Lanowski, a clinical psychologist. He stated that he believed the defendant acted in self defense; however, he said that his opinion was based in part upon the assumption that the victim did hit and kick the defendant prior to the shooting. He stated, "The probability would be less, I think, that she was acting in self defense if she had not been assaulted [that day]. I think that's obvious." He later added that the alleged attack immediately prior to the shooting was a big factor in his determination and, absent that factor, he would have to reconsider his opinion. In discussing the discrepancies between the two accounts of the shooting, he stated at one point, "I think we have the same dilemma, which one to believe." The trial court may have accepted defendant's original account of the event, which did not include any indication that the victim hit or kicked her.
The state also offered evidence to corroborate defendant's initial statement that the victim was seated at the time she shot him. The pathologist who examined the victim testified that it was his opinion, based on the entry angle of the bullets, that the person who fired the weapon was standing above the victim. Other evidence introduced by the state indicates there was a door behind the defendant from which she could have exited the house. Even assuming the trial court did feel she reasonably believed she was in imminent danger, he may have concluded the defendant could have escaped the danger by fleeing the house rather than killing the victim. Although there is not an unqualified duty to retreat the possibility of escape is a recognized factor in determining whether or not a defendant had the reasonable belief that deadly force was necessary to avoid the danger. State v. Collins, supra; State v. Bailey, 261 La. 831, 261 So.2d 583 (1972); Reporter's Comment, Subdivision (1) to R.S. 14:20. The trial court evidently accepted the state's evidence, and this evidence would support the inference that (1) the defendant could not reasonably have believed *730 she was in danger of losing her life or receiving great bodily harm; or (2) she could have saved herself from the danger without resorting to deadly force.
After reviewing the evidence in accordance with the standard set forth by the United States Supreme Court in Jackson v. Virginia, supra, and adopted by this Court, we find that the state did meet its burden of proof. Based upon the evidence presented at trial, a rational trier of fact could have found, beyond a reasonable doubt, that the state proved the homicide was not committed in self defense.
Accordingly, we affirm.
AFFIRMED.
NOTES
[*] Judges Philip C. Ciaccio and Israel M. Augustine of the Fourth Circuit Court of Appeal and Judge H. Charles Gaudin of the Fifth Circuit Court of Appeal participated in this decision as Associate Justices Ad Hoc joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Watson.
[1] The defendant and the victim were not married; however, they were living together at the time of the shooting.