442 So.2d 715 (1983)
STATE of Louisiana
v.
Jessie BELL.
No. 83 KA 0432.
Court of Appeal of Louisiana, First Circuit.
November 22, 1983.
*716 Ossie B. Brown, Dist. Atty., Ralph Roy, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Joel B. Dickinson, Baton Rouge, for defendant-appellant.
Before COVINGTON, COLE and SAVOIE, JJ.
COLE, Judge.
Defendant Jessie Bell appeals his conviction of second degree murder.
The facts are as follows. At approximately 11:00 P.M. on August 12, 1980, defendant visited a friend, Robert Moore, at Moore's home. Also present were Garland Jackson, who resided with Moore, and the victim, Joe Russell. The four men were in the front of the house where Moore slept. A television set was operating which provided illumination for the area. Defendant left Moore's house and returned after several minutes. At that point the victim, Russell, said, "I better get the hell out of here before some stuff starts," or words to that effect. Upon making this statement he struck defendant with his fist. A fight ensued between them causing the cord of the television set to be pulled from the wall, leaving the area in almost complete darkness. The scuffle continued until defendant left the house. When Moore turned the lights on he found Russell's body laying across a couch, with multiple stab wounds. Authorities were called and when they arrived Russell was pronounced dead. A large kitchen knife with a 12-inch blade was found in the front yard of Moore's house.[1] The knife was tested by the State Police forensic lab and was found to contain the same type blood (type "B") as Joe Russell's blood. In addition, Russell's blood was found to contain 0.36 per cent alcohol at the time of his death.
Approximately one hour later, defendant, who appeared to be intoxicated, was arrested. He was later indicted by the grand jury with second degree murder in violation of La.R.S. 14:30.1. He pleaded not guilty and was tried by a twelve person jury, which found him guilty as charged. He was sentenced by the trial court to be confined by the Department of Corrections for life, without benefit of probation, parole or suspension of sentence. Defendant assigns five errors.
Initially, we note the first four assignments of error allege there was insufficient evidence to convict defendant of second degree murder. At the time of this trial, the proper procedure for raising the issue of insufficient evidence was to move for a post verdict judgment of acquittal, the granting of which is reviewable by this court upon application of the State. La. Code Crim.P. art. 821. Or, defendant could *717 have moved for a new trial under article 851(5), allowing the trial court to consider the weight of the evidence, the granting or denial of which is not subject to review by the appellate courts. La. Const. art. V, § 10(B); La.Code Crim.P. art. 858. For a complete procedural analysis, with the attendant standards of review, see State v. Korman, 439 So.2d 1099 (La.App. 1st Cir. 1983).
No motion for post verdict judgment of acquittal or for a new trial was made by the defendant. However, it was held in State v. Washington, 421 So.2d 887 (La. 1982), a reviewing court, in spite of defendant's failure to proceed properly, must consider the evidence to determine whether or not it meets the constitutional standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), now codified in La.Code Crim.P. art. 821.[2]
Under Jackson, supra, before the reviewing court may reverse a verdict of guilty the court is required to consider the evidence in the light most favorable to the prosecution. It must then be convinced no rational finder of fact could have found the state proved the essential elements of the crime beyond a reasonable doubt. For the reasons set forth below as we discuss each assignment of error, we conclude the constitutional standards of Jackson v. Virginia, supra, (La.Code Crim.P. art. 821), have been satisfied.

ASSIGNMENT OF ERROR NUMBER ONE
Appellant argues the court erred in not setting aside the jury verdict of "guilty of second degree murder" because the evidence showed the victim provoked the fight by striking defendant without justification.
Apparently, the gist of this argument is the homicide was justified because it was done in self defense. Although there is some doubt as to defendant's right to raise the issue of self-defense at this time,[3] in order to protect defendant's rights, we will address this issue.
A justifiable homicide is defined in La.R.S. 14:20(1) as one "... committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger...." It was proven beyond a reasonable doubt defendant used a knife to stab the victim in excess of ten times, with at least six of the stab wounds to the victim's back and the back of his arms. The victim was extremely intoxicated at the time of the fight, with a blood alcohol content of 0.36 per cent. Even assuming the victim pulled the knife, we are convinced defendant could have defended himself by less drastic measures. In short, his actions (of repeatedly stabbing the victim in the back) were not necessary to save himself from any perceived danger. Therefore we find no merit in this assignment of error.

ASSIGNMENTS OF ERROR NUMBERS TWO, THREE, AND FOUR
Although worded differently, the gist of these three assignments is the jury erred in finding defendant guilty of second degree murder because there was no proof of specific intent to kill or inflict great bodily harm; and, alternatively, the most serious crime of which defendant could have been convicted was manslaughter, because the crime was committed in the heat of passion provoked by the misconduct of the victim.
Second degree murder is defined by La. R.S. 14:30.1(1) as follows:

*718 "Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; ..."
Specific criminal intent is defined by La. R.S. 14:10(1) as follows:
"Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
Using this definition, we have no difficulty in concluding the defendant, by stabbing the victim at least ten times, actively desired the criminal consequences (the death of the victim) to follow his actions. There can be no other explanation for the multiplicity of stab wounds inflicted upon an excessively intoxicated man. Although it was not proven which party pulled the knife, we note this factor is not essential to proving defendant had a specific intent to kill. Regardless of which party initially produced the knife, it is apparent that from the moment the defendant decided to use the knife, his purpose was to kill or inflict great bodily harm upon the victim.[4]
Defendant contends the evidence at most supported a conviction of manslaughter because the crime was committed in the heat of passion. Manslaughter is defined by La.R.S. 14:31 as follows:
"Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; ..." (Emphasis added.)
We find no provocation sufficient to deprive an average person of his self-control. An extremely intoxicated and not visibly armed man struck defendant, using only his fist. There was no evidence of previous "bad blood," threats, or any other circumstances that would increase the significance of the simple act of striking. We cannot conclude an average person would be so inflamed by the strike as to lose his self control and cool reflection in the way this defendant did.
For these reasons, we find these assignments of error to be without merit.

ASSIGNMENT OF ERROR NUMBER FIVE
Defendant contends the victim's long record of unprovoked assaults with a dangerous weapon, particularly with a knife, should have been presented to the jury.
There was some evidence related to this matter introduced at trial. Robert Moore testified the victim had a reputation for carrying and using a knife. Beyond this, there was no attempt by defendant to introduce any further evidence. Under Code Crim.P. art. 841 the defendant cannot object to an "irregularity or error" after the verdict unless it was objected to at the time of occurrence. Therefore, this assignment of error is without merit.
For these reasons, the conviction and sentence are affirmed.
AFFIRMED.
SAVOIE, J., concurs in the result.
NOTES
[1] Both witnesses, Robert Moore and Garland Jackson, testified they did not see either the victim or the defendant with a knife.
[2] This is not a circumstantial evidence case. The crucial fact, i.e., the defendant was the killer, is not at issue. Accordingly, we need not concern ourselves with the applicability of an additional standard of review. Cf., State v. Graham, 422 So.2d 123 (La.1982), rehearing denied 1982. See also State v. Korman, supra, noting especially footnote 3 therein.
[3] When an assertion of self-defense is made the State has the burden to refute it. State v. Brown, 414 So.2d 726 (La.1982), rehearing denied 1982. However the portions of the record transcribed show self-defense was raised by the defense for the first time in closing arguments. Obviously the state had no opportunity to refute the defense at this point.
[4] In State v. Boyer, 406 So.2d 143 (La.1981) it was held specific criminal intent is a state of mind which need not be proved as a fact. Instead, it may be inferred from the circumstances of the transaction and the actions of defendant. In Boyer, the court inferred a specific intent to kill from the fact that defendant shot the victim in the head at close range. The same intent can be inferred from the facts of the present case.