466 So.2d 660 (1985)
STATE of Louisiana
v.
Cecelia J. NECAISE.
No. 84-KA-338.
Court of Appeal of Louisiana, Fifth Circuit.
March 11, 1985.
*661 Dorothy A. Pendergast, Asst. Dist. Atty., Gretna, for the State.
William Noland, New Orleans, for defendant-appellant.
Before BOWES, GAUDIN and DUFRESNE, JJ.
*662 BOWES, Judge.
In the early morning hours of February 20, 1983, George Necaise died from five gunshot woundsthree to the left back and two to the back left-side of the head. On March 18, 1983, George's wife, Cecelia J. Necaise, was indicted for manslaughter (LSA R.S. 14:31) in connection with Mr. Necaise's death. The defendant entered a plea of not guilty, was tried and convicted by a twelve-person jury, and sentenced to twelve years at hard labor. From that conviction and sentence, she now appeals.
Appellant did not deny shooting her husband, rather she asserted that her action was justified since she acted in self defense.
On appeal, defendant assigned fifteen alleged errors; however, she argues only the following eight assignments:
(5) The trial court erred in ruling that the victim's statements on the night of the offense were inadmissible hearsay.
(6) The trial court erred in ruling that the victim's threats against the defendant on occasions prior to the offense were inadmissible hearsay.
(7) The trial court erred in refusing to allow the admission of evidence pertaining to the victim's prior violent acts against the defendant.
(10) The trial court erred in refusing to allow expert testimony as to the defendant's state of mind at the time of the offense.
(12) The trial court erred in refusing to allow the defendant to admit into evidence the prior-recorded testimony of an unavailable material witness.
(13) The trial court's instructions to the jury regarding the law on manslaughter and self-defense deprived defendant of a fair trial.
(14) The evidence adduced at trial was insufficient to support the verdict of guilty of manslaughter.
(15) The sentence imposed by the trial court is insupportably excessive.
Since assignments of error numbers 1, 2, 3, 4, 8, 9 and 11 were not briefed, we deem them abandoned. See Uniform Rules Courts of Appeal, Rule 2-12.4. See also State v. Smith, 452 So.2d 251 (La.App. 5th Cir.1984) and State v. Becnel, 441 So.2d 339 (La.App. 5th Cir.1983).

ASSIGNMENTS OF ERROR NUMBERS FIVE, SIX AND SEVEN
Assignments of error numbers five, six and seven each deal with certain testimony which the defense sought to illicit from the defendant at trial and to which the State objected. In each instance, the trial judge initially sustained the State's objections, but at some subsequent point in the trial allowed the admission of that material to which the State had objected. At one point or another in the proceeding, the court allowed the defendant to freely testify as to everything the victim did and said on the day of his death. The defendant's testimony extensively details what she and the victim were arguing over. At several points, she indicates the apparent scorn the victim felt for the police.[1] The testimony is also filled with references to attempts at separation and divorce instituted by the defendant.
The record is replete with examples of how tolerant the court was in allowing Mrs. Necaise to present her defense. The defendant testified that the victim slapped her around on the day she shot him. (Vol. I, Tr. p. 10) She testified that Mr. Necaise held an open knife to her throat and threatened to "cut my head off" (Vol. I, Tr. p. 12), that he "kicked me in my back" (Vol. I, Tr. p. 12) and, after much verbal abuse, *663 forced her by knifepoint to engage in sexual relations (Vol. I, Tr. p. 19). The victim then forced the defendant to lay in bed next to him and "count every second.... "I want you to wonder what minute I'm going to cut your throat." (Vol. I, Tr. p. 22). Mrs. Necaise testified that she was terrified of being killed and, slipping her gun from beneath her mattress as she eased out of the bed, tried to escape from the bedroom, but, upon hearing movements in the bed, turned and saw the victim raising up with his fist clenched and "I panicked. And before I knew it, the gun just went off."
Not only did the defendant testify extensively regarding prior beatings at the hands of her husband, but defense exhibits DM-1 through DM-3 depict the battered condition of the defendant after two such occurrences. Further, defense exhibits D-9A through D-10 are hospital records which report injuries suffered by Mrs. Necaise at the hands of her husband. All of this was corroborated by the testimony of appellant's three daughters.
The Louisiana Supreme Court has consistently held that exclusion of testimony properly admissible does not constitute reversible error if the later testimony at another time during trial brings out the information sought. State v. Jordan, 420 So.2d 420 (La.1982); State v. Hills, 379 So.2d 740 (La.1980); State v. Carvin, 308 So.2d 757 (La.1975); State v. Russell, 434 So.2d 460 (La.App. 2nd Cir.1983). In Jordan, supra at 430, the court stated:
By Assignment No. 12 defendant contends that the trial court erred when it sustained the state's objection to a question by defense counsel to S. William Provensal, III. Mr. Provensal had previously stated that he looked outside and saw a man wearing a ski mask over his head and holding a pistol in his hand. Defense counsel asked Mr. Provensal whether the person who knocked on the door when his father-in-law (the victim) answered it was the same masked person he later saw when he walked to the door to look out. The state objected on the ground that the question called for an opinion; the trial court sustained. Subsequently, Mr. Provensal testified that when his father-in-law answered the door he could not see the door or who was outside. No prejudice could have resulted from the denial since the witness subsequently answered the question. This assignment lacks merit.
The Russell court used similar language when addressing an assignment on the same issue:
Although an initial objection was sustained, the defense was subsequently allowed to elicit from the witness the witness's impression of the sex and race of the caller. Because the defense was ultimately allowed to elicit the testimony desired from the witness, there is no error or prejudice to the defense.
Russell, supra at 466.
The trial transcript shows that defense was allowed eventually to present detailed, exhaustive, testimony concerning the vicious nature of the victim's character, including prior threats and beatings which the victim inflicted upon the defendant. We therefore find that any error committed by the trial judge in previously excluding some portions of the defendant's testimony from evidence was harmless in nature, as such evidence was admitted at sometime during the trial.
Accordingly, we conclude that assignments of error numbers five, six and seven are without merit.

ASSIGNMENT OF ERROR NUMBER 10
The trial court erred in refusing to allow expert testimony as to the defendant's state of mind at the time of the offense.
During the course of the trial, the defense called Dr. Robert Davis, a psychiatrist, to the witness stand. Dr. Davis had interviewed the defendant twice in the period of time following her arrest. Dr. Davis sought to testify regarding characteristics shared by the defendant and other "battered women" whom he treated. The State objected to any testimony which Dr. Davis sought to give, stating:

*664 Your Honor, I don't have any questions concerning his qualifications at this time, but if he was not a witness to any of these events, I'm going to object to his testimony, in view of the fact that the insanity defense was not raised. The State has no notice of any insanity defense, and the code requires that the State be apprised of this defense.
The State also objected to various questions on the grounds of relevancy and invasion of the fact-finding province of the jury.
On appeal, the defense argues that Dr. Davis' testimony was relevant as to the defendant's state of mind at the time of the offense, and, as a proper foundation had been laid, the testimony should have been admitted into evidence.
The issue of the admissibility of psychiatric testimony regarding lack of specific intent due to the "battered or abused wife syndrome" was addressed in State v. Edwards, 420 So.2d 663 (La.1982). In Edwards, supra, the defense called Dr. William H. Kimbell, a practicing medical doctor specializing in the field of psychiatry, who had examined the defendant on two occasions, specifically for the purpose of giving an opinion as to whether or not defendant had the mental capacity to formulate a specific intent to kill in a non self-defense situation. The mental condition attributed to Mrs. Edwards was the "abused or battered wife syndrome." The defense did not contend that Mrs. Edwards was insane and no plea of not guilty by reason of insanity had been entered. The State objected to such testimony on the grounds of irrelevancy and that such psychiatric testimony invaded the fact-finding province of the jury. The objection was sustained on this basis and later the trial court additionally ruled that this testimony would be disallowed because the defense had failed to give the notice required by La.C.Cr.P. Art. 726.[2]
The Supreme Court, in reviewing the trial judge's ruling in Edwards, supra at page 678, stated:
The testimony of Dr. Kimbell was clearly inadmissible. In State v. LeCompte, 371 So.2d 239 (La.1979), we stated at page 243:
Louisiana Code of Criminal Procedure Article 651 provides in pertinent part:
"When a defendant is tried upon a plea of `not guilty', evidence of insanity or mental defect at the time of the offense shall not be admissible."
Under this statute, evidence of a mental condition or defect is inadmissible when the defendant failed to plead not guilty and not guilty by reason of insanity. Moreover, a mental defect or disorder short of insanity cannot serve to negate specific intent and reduce the degree of the crime. State v. Rideau, 249 La. 1111, 193 So.2d 264 (1966) and the cases cited therein. See also LSA-R.S. 14:14; LSA-C.Cr.P. Art. 651, Official Revision Comment (a); State v. Berry, La., 324 So.2d 822 (1975). In State v. Jones, La. [359] So.2d 95 (1978), we upheld a trial court's ruling which precluded counsel from arguing that defendant's "neurotic, prone-to-hysteria mental condition precluded the specific intent required for murder ..." where defense had withdrawn her plea of not guilty by reason of insanity.
Initially, we note that specific intent is an ultimate legal conclusion to be resolved by the fact finders. Because an "expert witness must state the facts *665 upon which his opinion is based," we can reasonably deduce that the testimony of an expert in psychiatry and psychoanalysis concerning the defendant's lack of specific intent would necessarily include testimony of a mental defect or condition. See LSA-R.S. 15:465. Stated another way, in order for the physician to testify as to the effect, no specific intent, she would testify as to the cause, mental condition....
We hold, therefore, that Louisiana Code of Criminal Procedure Article 651 precludes admission of an expert's testimony concerning the absence of specific intent when the defendant's plea is not guilty.
Again in State v. Wade, 375 So.2d 97 (La.1979), cert. denied 445 U.S. 971, 100 S.Ct. 1665, 64 L.Ed.2d 249 (1980), we reiterated the rule in LeCompte by holding that due process is not offended by the Louisiana rule that a defendant cannot rebut evidence of specific intent by presentation of psychiatric testimony, without pleading not guilty by reason of insanity.
We believe that allowing testimony which would attempt to prove the defendant a victim of "battered women syndrome" and which would seek to establish her "state of mind"[3] at the time of the shooting, absent a plea of "not guilty and not guilty by reason of insanity", would be, in effect, condoning the concept of "partial responsibility"the allowing of proof of mental derangement short of insanity as evidence of lack of deliberate or premeditated design. The concept of partial or impaired responsibility has been rejected in this State in favor of an "all or nothing" (i.e., sane or insane) approach. See Edwards, supra, LSA R.S. 14:14 and La.C. Cr.P. art. 552. This assignment has no merit.

ASSIGNMENT OF ERROR NUMBER 12
Whether the prior recorded testimony of an unavailable witness, who cannot be found despite due diligence, is admissible at trial?
Appellant urges that the testimony of Sergeant Edith Evans was crucial to her defense in that Sergeant Evans could place the knife, with which Mrs. Necaise claims she was threatened, in the clenched hand of her husband rather than under the victim's armpit as depicted in the crime scene photos introduced into evidence.
Sergeant Evans had been subpoenaed by the State as a prosecution witness for the trial, but not for the defense. However, prior to trial, a memo from the Sheriff's office was dispatched to the District Attorney, requesting that the officer be excused from appearing since she was scheduled for vacation during the week of the trial. The request was granted. Upon learning that Sergeant Evans was not to appear, the defense sought on two different occasions to secure her presence by instanter subpoena. Unfortunately, the officer could not be located. However, the defense had not previously subpoenaed her or indicated an intention to call her as a defense witness.
The statement Sergeant Evans made at the preliminary hearing, which the defense alleges to be so crucial to its case, is as follows:
Q. But you yourself never saw the location of the knife and you never saw a knife.
A. No sir. They said they've got a knife and it's in his hand. He said we've got a knife in his hand, a small pen knife.
First, the statement giving the location of the knife is obviously hearsay and thus would be inadmissible if the Sergeant were to attempt to so testify at trial. Secondly, an examination of the remainder of her testimony at the hearing reveals the following:
Q. Let me ask you this. The knife was photographed before it was removed, is that correct?
A. We were told that there was a knife but we didn't touch the body and then *666 when the coroner got there he moved the body and there was a knife and then the crime lab took the pictures of the position of the knife but the crime lab took the pictures of the scene itself. The general position of everything.
Q. That's what I wanted to ask you about. When you got there you couldn't see a knife, could you?
A. No sir.
Q. And the knife wasn't in fact in view until the coroner moved the body, is that also correct?
A. Yes sir.
Additionally, during the trial, Deputy Wayne Richard, Sergeant Richard Lincoln, Deputy Louis Meador, Detective James Trapani, and Crime Scene Technician Don Carson, each testified that there was no knife found in Mr. Necaise's hand, and all but Sergeant Richard (who took the first photos and saw no knife at all), testified that a knife was found under the right armpit of the body. State Exhibit # 9, a photograph showing the location of the knife when it was first discovered, shows it as being under the right armpit also, thereby confirming this testimony beyond all reasonable doubt. Sergeant Evans' testimony that she did not see the knife when she entered the room and viewed the body corroborates the testimony of the other sheriff's personnel at the crime scene. Sergeant Evans' testimony as to the location of the knife when discovered was obviously an erroneous statement based on what Sergeant Evans remembered hearing someone say. The testimony of all others present, and pictures of the crime scene, all support the fact that the knife was not found in the victim's hand, but under his body. It would not appear possible that the jury would have found the hearsay testimony included in the transcript which defense counsel sought to introduce was worthy of greater weight than the testimony of five witnesses who testified in person. Therefore, we find that Sergeant Evans' recorded testimony, even if introduced, would not have had any effect on the verdict.
La.C.Cr.P. art. 921 states that a judgment or ruling shall not be reversed by any appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused. This ruling would not have done so. Accordingly, this assignment is completely without merit.

ASSIGNMENT OF ERROR NUMBER 13
The trial court's instructions to the jury regarding the law on manslaughter and self-defense deprived defendant of a fair trial.
Defendant requested that the instruction on manslaughter include a fourth element, i.e. (4) the killing was not committed in self defense. The trial judge refused to include this special charge in the manslaughter definition, noting that the requested charge was included in the general charge. Indeed, the trial judge gave a rather lengthy charge regarding self-defense.[4] A defendant *667 is not entitled to have a special charge given to the jury where the substance of that charge is included in the general charge. La.C.Cr.P. art. 807; State v. Tolbert, 390 So.2d 510 (La.1980), wherein the Supreme Court upheld the denial of a requested special charge on self defense on the grounds that the substance of the special charge was included in the general charge given by the trial judge.
We find that the trial judge acted properly in giving an instruction on self-defense separate and apart from the manslaughter instruction and that the charge given was correct. Self-defense or lack thereof is not an element of manslaughter, but, rather, a defense to such a charge.
As to the self-defense charge given by the trial judge, defense counsel requested that No. 1the possibility of avoiding the necessity of taking human life by retreat be excluded from the charge. The trial judge refused to do so, whereupon the defendant noted an objection, stating that "I feel retreat is not essential under Louisiana law."
It is well-settled that the possibility of retreat is a factor to be considered when a plea of self-defense is made. State v. Brown, 414 So.2d 726 (La.1982); State v. Tolbert, 390 So.2d 510 (La.1980). As La.C. Cr.P. art. 802 dictates that the judge shall charge the jury as to all law applicable to the case, we find that the trial judge was duty bound to include a statement on the possibility of retreat as part of his instruction on the self-defense doctrine. See instruction on retreat factor in State v. Tolbert, supra.
Defense counsel's next contention is that the trial judge should have qualified his statement on the retreat factor. We note that defense counsel did not express this basis for objection at the trial level. A new basis for objection cannot be raised for the first time on appeal. State v. Burdgess, 434 So.2d 1062 (La.1983); State v. Clayton, 427 So.2d 827 (La.1982).
The defendant also requested that the following special charge on the burden of proof regarding self-defense be given:
BURDEN OF PROOF-SELF DEFENSE
A defendant in a homicide prosecution who asserts that he acted in self defense does not have the burden of proof on that issue because the state bears the burden of establishing beyond a reasonable doubt that the homicide was not perpetrated in self defense. State v. Brown, [supra]
This request was also denied by the trial judge since it closely, contextually, paralleled the charge he prepared (see footnote 4). The law clearly provides that a requested special charge which is included in the general charge need not be given. La. C.Cr.P. art. 807; State v. Tolbert, supra.
On appeal, defense counsel argues that the charge which the trial judge read to the jury suggested that the defendant had some burden to prove self-defense and that the court did not instruct the jury that the State had to prove the absence of self-defense. Defense counsel's contention apparently is based upon the transcribed testimony of the charges read to the jury, wherein it is reported that the trial judge stated: "A defendant who raises the defense that he acted in self-defense does not have the burden of proving beyond a reasonable doubt that the offense was not committed in self-defense." This transcribed charge is missing nine words in the middle which the trial judge's written proposed jury charges had included. The omission of these words changed the context of the charge. The prosecution contends that the trial judge read the charge exactly as the written proposed charge dictated and that the omitted words are the result of garbled transcription. Defense counsel apparently contends that the charge was read to the jury exactly as the trial transcript relates.
At trial, defendant-appellant did not object to the charge as read to the jury. *668 La.C.Cr.P. art. 801 provides in pertinent part:

A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefore shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury. [emphasis added]
Therefore, we hold that the defendant is precluded from raising this contention on appeal. A new basis for objection cannot be raised for the first time on appeal. State v. Burdgess, supra; State v. Clayton, supra.
Additionally, appellant requested that the trial judge give the following special charge on responsive verdicts:
The defendant is charged with manslaughter.
In order to convict the defendant of the offense charged, you must find beyond a reasonable doubt that the state proved every element of manslaughter and that the defendant did not act in self defense.
You may return one of the following verdicts:
GUILTY
NOT GUILTY
Thus, if you are convinced beyond a reasonable doubt that the state proved every element of manslaughter and that the defendant did not act in self defense, your verdict should be:
GUILTY
If you are not convinced beyond a reasonable doubt that the state proved every element of manslaughter or if the state has failed to prove beyond a reasonable doubt that the defendant did not act in self defense your verdict should be;
NOT GUILTY
The court refused to give this special charge because it was already covered in his general charges on self-defense and the court's responsive verdict charge. The defendant does not present argument in brief as to why the responsive verdicts given by the trial judge were erroneous and our review discloses no error. This assignment also lacks merit.

ASSIGNMENT OF ERROR NUMBER 14
The evidence adduced at trial was insufficient to support the verdict of guilty of manslaughter.
In State v. Wright, 445 So.2d 1198, 1201 (La.1984), the Supreme Court set forth the following standard for reviewing sufficiency of evidence on appeal:
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. Where circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that: "Assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
This Court has recognized that R.S. 15:438 is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever circumstantial evidence forms the basis for the conviction. State v. Austin, 399 So.2d 158 (La.1981). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.
*669 The defendant's assignment relates to the sufficiency of the State's proof that the defendant did not act in self-defense. "A defendant in a homicide prosecution who asserts that he acted in self-defense does not have the burden of proof on that issue because the state bears the burden of establishing beyond a reasonable doubt that the homicide was not perpetrated in self defense. State v. Patterson, 295 So.2d 792 (La.1974); State v. Collins, 306 So.2d 662 (La.1975)." State v. Brown, supra; State v. Freeman, 447 So.2d 1145 (La.App. 3rd Cir.1984) writs denied 449 So.2d 1356.
From the outset, Mrs. Necaise admitted killing her husband, but claimed that she was acting in self-defense. The State's case in chief was directed toward showing that the defendant did not kill the victim in self-defense. The pertinent facts brought out by the State at trial are as follows:
1. There were no bruises or other marks of violence on the victim corroborating her testimony that she had been beaten and thrown around on the night she shot her husband.
2. The victim had been shot five times in the back and head, and was found lying in bed on his right side, as though he had been asleep when the bullets struck. (The coroner testified that there was no test to determine if a victim was asleep when shot; victim could have been lying on abdomen or right side when shot).
3. The knife which the defendant alleged the victim was threatening her with was found covered by a handkerchief and underneath the right armpit of the victim.
4. There were no fingerprints on the knife or gun found at the scene, indicating that they had apparently been wiped off with the handkerchief before they were placed in the positions in which they were found.
5. The defendant, who testified she was terrified of the victim and did not know whether he was dead after being shot, remained on the scene, handled the gun and knife, and did not call for police or emergency units.
6. The defendant drove to Old Man Rivers and spoke with her brother before she attempted to contact the police or emergency units. Her brother actually made the call to which police responded.
7. When Patrolman David Firmin arrived at Avenue A in response to the call and asked why the police had been called, the defendant replied, "I might as well tell you now because I know I'm going to jail. I shot him."
8. While the defendant in her testimony alluded to the victim's alcohol and drug abuse, an autopsy revealed no traces of alcohol or drugs in the victim's body.
The relevant issue in this assignment is whether the above evidence proved beyond a reasonable doubt that the victim did not attack the defendant in such a manner as to give rise to a reasonable belief in her that she was in imminent danger of losing her life or receiving great bodily harm and that killing the victim was necessary to save herself from that danger. State v. Savoy, 418 So.2d 547 (La.1982). Defense Counsel relies on the Supreme Court's decision in Savoy as support for his contention that the State did not meet this burden.
In Savoy, the defendant wife shot the victim husband once in the chest. The shooting took place on the front porch of the residence. There were no witnesses other than the defendant herself. The defendant told several different stories as to events preceding the shooting, the last being that the victim was attacking her with a knife at the time she shot him. The defendant was convicted of second degree murder and appealed. In reversing her conviction, the Supreme Court stated:
Viewing the evidence in light most favorable to the prosecution, a rational juror might conclude that Savoy fired the shot with the specific intent to kill or to do great bodily harm. However, none of the physical evidence bears on whether or not Francis Sam, Jr. attacked Ms. Savoy on the night of February 10neither the trajectory of the bullet, nor the *670 distance from which the bullet was fired, nor the fact that the victim's knife was found in the truck (and not on the porch), nor the fact that Savoy did not appear to have been in a strugglenone of these facts is inconsistent with the reasonable possibility of self-defense.
The addition of testimonial evidence does not solve the matter for the State. We grant that Savoy was shown to be a consummate liar through the testimony of several policemen who recounted the various conflicting scenarios told by the defendant. But even the total destruction of Savoy's credibility does not entail the creation of affirmative, substantive evidence which weights on the side of the State. Without such evidence, the State cannot be held to have proved lack of self-defense beyond a reasonable doubt. In the absence of circumstantial evidence to prove the defendant's guilt, that is, the lack of self-defense, we are left with only the defendant's various accounts. The most that any juror could rationally conclude was that the defendant was lying, and that no one except the defendant will ever know to a moral certainty the truth as to what happened on the night of February 10, 1981. In the absence of such a moral certainty, we must find no rational juror could have regarded the State as having proved its case beyond a reasonable doubt.
Accordingly, the judgment of conviction and the sentence of Dora Mae Savoy are hereby set aside and annulled, and a judgment of acquittal is entered on her behalf. [emphasis added]
Savoy, supra at 550-551.
Savoy, however, can be distinguished from the instant case. First, there was independent evidence in Savoy that the defendant had been drinking heavily and was in a belligerent mood on the day he was shot. In the instant case, the coroner testified there were no drugs or alcohol in the victim's system at the time of his death, nor was there any independent testimony that the victim was in a belligerent mood when shot.
Secondly, the victim in Savoy was shot once in the chest while standing on the front porch and was apparently engaged in an argument with the defendant. In the instant case, the victim was shot twice in the back of the head and three times in the back while in bed, indicating he may have been asleep at the time of the shooting (this can be construed as circumstantial evidence that the defendant did not kill in self-defense).
We are of the opinion that principal facts and evidence brought out by the State at the trial, as enumerated and set out above, are more than sufficient to show that the State fully carried its burden of proving beyond a reasonable doubt that Mr. Necaise did not attack his wife in such a manner as to bring about a reasonable apprehension by her of death or great bodily harm.
This assignment, therefore, is also without merit.

ASSIGNMENT OF ERROR NUMBER 15
The sentence imposed by the trial court is insupportably excessive.
LSA R.S. 14:31 provides: "[...] Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years." In the instant case, the defendant was sentenced to twelve years by the trial judge, who, in imposing the sentence, gave these reasons:
I have thought long and hard about what an appropriate sentence in your case is. I continued the matter one time. I am aware of the sentencing guidelines in Art. 894.1. I feel that you are in need of correctional treatment in a custodial environment that can be effectively done by commitment to an institution. And most of all, I think, Mrs. Necaise, if I were to give you a lesser sentence, it would depreciate the seriousness of your crime.
I have also weighed in my mind, the mitigating article, the mitigating provisions of that article, numbers one through eleven. I have turned over the facts of the trial in my mind countless *671 times. You shot your husband five times.
It's the sentence of this court that you are to be incarcerated at hard labor in the custody of the Louisiana Department of Corrections for a period of 12 years...
Appellant argues that a sentence of 12 years is excessive under the circumstances of the case and is nothing more than the purposeless imposition of pain and suffering. The defendant also alleges that the trial judge failed to comply with La.C.Cr.P. art. 894.1 and, since the record does not clearly illumine the trial judge's sentencing choice, the case must be remanded for resentencing.
In State v. Lanclos, 419 So.2d 475 (La.1982), the Louisiana Supreme Court stated that compliance with Art. 894.1 is not an end in itself. The articulation of the factual basis for a sentence is the goal of the article, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary, even where there has not been full compliance with Art. 894.1. See also State v. Wimberly, 414 So.2d 666, 672 (La.1982), wherein the majority stated:
In those cases in which we have vacated the sentence and remanded the case for resentencing in full, recorded compliance with Article 894.1, our action was not prompted simply by the sentencing judge's failure to give his reasons for the penalty imposed. Rather, it was because, based on the inadequate record presented to us, there appeared to be a substantial possibility that the defendant's complaint of an excessive sentence had merit. In each case, pursuant to our duty to uphold the constitution, which expressly prohibits the imposition by law of excessive punishment, we vacated the sentence and remanded the case for resentencing on an adequate record, including strict compliance with Article 894.1.
We are impressed by the serious thought given the sentence by the dedicated trial judge, as reflected by his reasons stated above. Sympathy naturally flows toward a wife who has suffered the beatings, indignities, and terror that the victim obviously inflicted on the defendant at various times. However, our law does not forgive or condone the taking of a human life, no matter how wretched, except in self-defense and, under the particular circumstances of this case, we do not find the homicide justifiable nor the sentence imposed upon Mrs. Necaise excessive. She emptied her gun into her husband while he was apparently asleep, presenting no active threat to her. She then wiped the gun and the empty shell casing "clean" of fingerprints and went off to find her brother at a local night spot. Since the trial judge only sentenced the defendant to 12 out of a possible 21 years, it is evident that he considered the victim's past violent behavior toward the defendant, her prior lack of arrests or convictions, and her record of employment, in deciding upon his choice of sentences. Over the last five years, we have found sentences of from 3 years to 15 years for similar crimes. Therefore, we find this assignment without merit.
Accordingly, for the reasons stated above, the conviction and the sentence of the defendant are affirmed.
AFFIRMED
NOTES
[1] "I'll do it [kill the defendant] in front of [the police] if I have to." (Vol. I, September 15, 1983, Tr. p. 13)

"But if you call the police ... you ass is mud!... I'll kill you in front of them if I have to." (Vol. I, September 15, 1983, Tr. p. 14)
"[H]e dared me [to call the police]. He said if he saw a police car, he could kill me in front of them." (Vol. I, September 15, 1983, Tr. p. 15) "Q. Were you afraid George [the victim] would kill the police if they came? A. No doubt in my mind. Q. You think he would? A. No doubt in my mind." (Vol. I, September 15, 1983, Tr. p. 80)
[2] La.C.Cr.P. Art. 726 provides:

A. If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall not later than ten days prior to trial or such reasonable time as the court may permit, notify the district attorney in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other orders as may be appropriate.
B. If there is a failure to give notice as required by Subsection A of this Article, the court may exclude the testimony of any witness offered by the defendant on the issue of mental condition. [emphasis ours]
[3] We note that "specific intent" is no more than a "state of mind."
[4] A homicide is justifiable if committed in selfdefense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.

The danger need not have been real as long as the defendant reasonably believed that he was in actual danger.
Some factors that you should consider in determining whether the defendant had a reasonable belief that the killing was necessary are:
(1) the possibility of avoiding the necessity of taking human life by retreat;
(2) the excitement and confusion of the occasion;
(3) the possibility of preventing the danger to himself by using force less than killing; and
(4) the defendant's knowledge of his assailant's dangerous character.
Thus, if you find:
1) that the defendant killed in self-defense; and
2) that the defendant believed that he was in danger of losing his life or receiving great bodily harm; and
3) that the defendant believed the killing was necessary to save himself from the danger; and
4) that the defendant's beliefs were reasonable in light of the circumstances;
then you must find the defendant not guilty.
A defendant who raises the defense that he acted in self-defense does not have the burden of proof on that issue. The state has the burden of proving beyond a reasonable doubt that the [homicide] [offense] was not committed in self-defense.