COLE, Judge.
Defendant, Charlie Jackson, Jr., was charged by grand jury indictment with the second degree murder of Percy Tillotson, a violation of La.R.S. 14:30.1. Defendant pled not guilty and waived trial by jury. He was found guilty as charged and sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. Defendant now appeals, urging as his sole assignment of error that the verdict of second degree murder was contrary to the law and the evidence, because the state’s evidence was insufficient to establish the killing was not committed in self-defense.
A defendant in a homicide prosecution who asserts he acted in self-defense does not have the burden of proof on this issue. The state bears the burden of establishing beyond a reasonable doubt a homicide was not perpetrated in self-defense. State v. Brown, 414 So.2d 726 (La.1982). La. 14:20 provides in pertinent part:
“A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger....”
The relevant inquiry on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt the homicide was not committed in self-defense. State v. Brown, supra.
The facts of the present case are as follows. During the afternoon of July 6, 1982, Percy Tillotson’s automobile was found partially in a ditch on Thad Cain Road in East Baton Rouge Parish. Mr. Tillotson’s body was positioned in the middle of the front seat of the vehicle with his head laying on the right arm rest. His fingers and thumbs evidenced “slash marks” and his pockets were empty. An autopsy revealed the cause of death was shock and loss of blood resulting from multiple stab wounds. The time of his death was determined to be approximately 7:00 A.M. that day. Mr. Tillotson had last been seen leaving an all night card game with defendant at approximately 4:30 to 5:00 A.M. on July 6, 1982. When first questioned by the police on the evening of July 6th, defendant admitted he had attended the card game at which Percy Tillotson had been present, but maintained he had left alone and walked home at approximately 11:00 P.M.
When defendant was questioned again on the next day, he gave a taped statement detailing a different account of his contact with Mr. Tillotson. The substance of this statement was as follows. Defendant admitted he left the card game with Mr. Tillotson at approximately 3:00 A.M. on July 6th. He stated Mr. Tillotson was to drop him off at a store on Highland Road. *955 However, he claims Mr. Tillotson refused to stop at the store and instead drove defendant to the Tillotson residence. Mr. Til-lotson slept for a brief time and then prepared coffee. The two men left the Tillot-son residence at approximately 6:00 A.M. and proceeded to the store where Mr. Til-lotson bought gasoline and a newspaper. Mr. Tillotson again refused to drive defendant home and, without explanation, grabbed defendant around the neck while the car was in motion. “[Defendant] kept on hitting [Tillotson] with something and the car went in the ditch.” Defendant stated he then grabbed a kitchen knife which was protruding slightly from under the front seat and stabbed Mr. Tillotson, who still had his hands around defendant’s neck. Defendant could not recall how many times he stabbed Mr. Tillotson and could offer no explanation for Mr. Tillot-son’s alleged sudden attack upon him. After stabbing Mr. Tillotson, defendant climbed over his body and sat in the driver’s seat. Defendant was preparing to leave the car when a white man, later identified as David Strange, offered his assistance in getting the car out of the ditch. After Mr. Strange departed, defendant got out of the car and walked home. In response to the officers’ questioning, defendant replied, “[Tillotson] ain’t say nothing. He was breathing” (when defendant exited the car). Further, he stated “[Tillotson] was saying help, something like that” while defendant stabbed him.
David Strange testified at trial as follows. On July 6,1982, he was employed by a forklift company and was driving to work at approximately 7:20 to 7:25 A.M. when he noticed a blue car traveling slowly at a distance of about one hundred to two hundred yards ahead of his vehicle. Mr. Strange lost sight of the car for about five seconds as it turned onto Thad Cain Road. As he approached the Thad Cain intersection, he noticed the car was stuck in a ditch. Mr. Strange then observed the passenger, later identified as defendant, pull the driver into the middle of the front seat and crawl across him. He did not observe any struggle between the vehicle’s occupants. Mr. Strange observed defendant unsuccessfully attempt to back the car out of the ditch. At that point, he parked his vehicle, approached the Tillotson car and asked defendant if they needed any help. Defendant appeared afraid but accepted Mr. Strange’s offer of assistance. Mr. Strange did not talk to Mr. Tillotson because he assumed Mr. Tillotson was drunk, as he was lying with his head back across the middle of the seat.[1] Mr. Strange’s first impression was that Mr. Tillotson had blood on the side of his face, although he did not notice any wounds on Mr. Tillot-son’s person. However, defendant’s relative seating position blocked a full view of Mr. Tillotson. Since the Tillotson car partially blocked the road, Mr. Strange was forced to drive to his place of employment by an indirect route, reaching his destination some five minutes later. When Mr. Strange looked back at the Tillotson automobile from that vantage point, he noticed defendant had left. Accordingly, Mr. Strange abandoned his efforts to borrow a forklift to assist defendant, assuming the vehicle’s passenger had also left.
In his trial testimony, defendant gave still another version of the incident in question. He testified after the Tillotson car veered into the ditch, he stabbed Mr. Tillot-son one time in the side then opened the car door and got out. Defendant stated it was Mr. Tillotson and not he who spoke with Mr. Strange, refusing his offer of assistance. He claimed Mr. Tillotson then tried to drive the car out of the ditch while shouting that he was going to kill defendant. Defendant stated he ran away from the car at this point and went home.
The trial court was faced with conflicting testimony in this case. The three different accounts of the incident given by defendant were riddled with inconsistencies. In addition, defendant’s trial testimony was in direct conflict with the testimony of Mr. *956 Strange, a totally disinterested witness. When there is conflicting testimony as to a factual matter, the question of credibility of witnesses is within the sound discretion of the trier of fact. State v. Jacobs, 435 So.2d 1014 (La.App. 1st Cir.1983). The trier of fact may accept or reject, in whole or in part, the testimony of any witness. See State v. Richardson, 459 So.2d 31 (La.App. 1st Cir.1984). The trial court obviously did not find defendant’s testimony to be credible. This court will not reweigh the credibility of witnesses in reviewing a case for sufficiency of the evidence. State v. Jacobs, supra.
The testimony of the coroner showed Mr. Tillotson sustained six stab wounds, which were inflicted to the neck, chest and abdominal cavity. These numerous stab wounds furnish adequate evidence to support a finding of specific intent to kill as required to sustain a conviction of second degree murder. See State v. Carney, 319 So.2d 400 (La.1975); State v. Bell, 442 So.2d 715 (La.App. 1st Cir.1983); writ denied, 444 So.2d 1244 (La.1984). The fact defendant made absolutely no attempt to obtain any medical assistance for Mr. Til-lotson, but merely went home and went to bed, is also pertinent in this regard.
In considering a claim of self-defense, it is necessary to consider whether the defendant had a reasonable belief he was in imminent danger of losing his life or receiving great bodily harm, and whether the killing was necessary, under the circumstances, to save the defendant from this danger. In connection with this inquiry, it is pertinent to note Mr. Tillotson was a thin, 71 year old man. At the time of the incident, defendant was almost 18 years old. Although there is no unqualified duty to retreat, the possibility of escape is a factor in determining whether or not a defendant held a reasonable belief that deadly force was necessary to avoid the danger. State v. Brown, supra. One of the law enforcement officers investigating the crime scene testified the front passenger door of the Tillotson vehicle could be freely opened even after the vehicle ran into the ditch. Mr. Tillotson was an unarmed, elderly man. Even accepting for the sake of argument defendant’s testimony that Mr. Tillotson attempted to choke him without provocation, the “slash marks” on Mr. Tillotson’s fingers and thumbs, together with defendant’s taped statement admitting Mr. Tillotson’s plea for help contemporaneous with his being stabbed, negate justification for the continued use of deadly force. In addition, defendant’s flight from the scene is another factor to be considered in weighing the probabilities for or against his guilt. Flight from the scene indicates a consciousness of guilt and is relevant evidence. State v. Burge, 359 So.2d 616 (La.1978).
After careful consideration of all of the state’s evidence, we conclude any reasonable trier of fact could have found the state carried its burden in establishing beyond a reasonable doubt Mr. Tillotson’s homicide was not committed in self-defense.
For the foregoing reasons, this assignment of error is without merit.
AFFIRMED.

. The results of a blood alcohol test performed on a blood sample taken from Mr. Tillotson by the coroner indicated a blood alcohol concentration of 0.00 per cent by weight.