KNOLL, Judge.
Defendant, Donald Harvey Vallier, was convicted of second-degree murder, a violation of LSA-R.S. 14:30.1 for the killing of his girlfriend’s father, Gilbert Christian. He was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. He brings this appeal seeking a reversal of his conviction. We affirm.
FACTS
On the night of May 15, 1984, Vallier, twenty-six years of age, went to the home of Gilbert Christian, located at 502 Farrell Road, Lafayette, Louisiana, in order to speak to his girlfriend, Charlisa Christian. Vallier and Charlisa had previously lived together for three years and had a child from this relationship. Mr. Christian answered Vallier’s knock on the front door and requested that he leave. Vallier did not leave immediately and an altercation ensued. Mr. Christian was carrying a stick when he confronted Vallier. During the altercation Vallier shot Mr. Christian three times with a .25 caliber pistol, killing him.
Vallier then entered the Christian house whereupon an altercation occurred between him and Mrs. Lillian Christian, wife of the deceased. Mrs. Christian struck Vallier with the stock of a shotgun, cutting him on his head. Mrs. Christian was severely wounded in the neck from a bullet fired from Vallier’s pistol. Vallier then left the Christian residence on foot, forcing Charli-sa to accompany hiim
Vallier and Charlisa were spotted on the Vermilion River Bridge on Ambassador Caffery Road by Officer Terry Richard of the Lafayette Police Department. When Richard shined a spotlight on Vallier, he pushed Charlisa down and fled under the bridge. Later, Vallier’s mother called Detective Curley D’Artez of the Lafayette Police Department to come to her home where Vallier turned himself in.
ASSIGNMENT OF ERROR NUMBER ONE
Vallier contends the State’s evidence was insufficient to establish that the killing was not committed in self-defense.
LSA-R.S. 14:30.1 provides in pertinent part:
“Second-degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of ... aggravated kidnapping ...”
A defendant in a homicide prosecution who asserts that he acted in self-defense does not have the burden of proof on that issue because the State bears the burden of establishing beyond a reasonable doubt that the homicide was not perpetrated in self-defense. State v. Patterson, 295 So.2d 792 (La.1974); State v. Collins, 306 So.2d 662 (La.1975); State v. Brown, 414 So.2d 726 (La.1982).
The relevant inquiry on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was committed in self-defense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Moody, 393 So.2d 1212 (La.1981).
Since Vallier has admitted killing Gilbert Christian by shooting him, we must *1170 concentrate on the sufficiency of the evidence to determine if Vallier’s claim of self-defense has been negated or that he was the aggressor in the incident.
LSA-R.S. 14:20 provides in pertinent part:
“A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger ...”
LSA-R.S. 14:21 provides:
“A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.”
Mrs. Lillian Christian, the victim’s wife, testified that on May 15, 1984, she and her husband were awakened around midnight by Vallier. Mr. Christian went outside and told Vallier to leave but he refused. Mr. Christian reentered the house, put his pants on, picked up a stick, and went back outside. There were no harsh words exchanged and appeared to be no argument. Mr. Christian started advancing toward Vallier and was warned to stop. Mrs. Christian then saw Vallier put his hand inside his shirt, pull out a gun, and shoot Mr. Christian. Mrs. Christian went inside the house and heard five more gunshots. Vallier then went to the Christian’s front door and threatened to kill everyone if the door was not opened. Vallier broke down the door and was struck on the head with the stock of a shotgun by Mrs. Christian. Vallier took the gun away from Mrs. Christian and threw it aside. Mrs. Christian proceeded toward the kitchen, when Vallier shot her in the neck. Vallier then grabbed Charlisa and left.
Charlisa testified that she was awakened by gunshots and saw her father and Vallier struggling. She went back to her room to be with her children. Vallier shouted to her that he would shoot her mother just like he shot her father if she did not come out of the room. After Charlisa came out, Vallier dragged her outside by her hair and forced her to leave with him. Vallier dropped his gun in a field as he left the scene.
Officer Jim Craft, of the Lafayette Police Department, testified that upon inspection of the scene, he found Mr. Christian lying face up in the front yard. He had apparently died from multiple gunshot wounds. A shotgun was found laying in the yard approximately six to seven feet from the front porch and several live rounds of .25 caliber ammunition were found on the porch by the front door. Also, five spent cartridges were found, two of which were located 36 and 30 feet respectively from the body. An inspection of the surrounding area revealed a Raven .25 caliber pistol in a field near the Christian home.
A short time after the killing had taken place, Officer Terry Richard observed Vallier and Charlisa crossing a bridge on Ambassador Caffery Road. When Officer Richard turned the police lights on, Vallier pushed Charlisa down and fled under the bridge.
Vallier’s version of what happened at the Christian’s home is substantially different from the account given by Lillian and Char-lisa. He testified that he went to the Christian home at approximately 10:30 or 11:00 p.m. in order to give Charlisa some pictures of their baby. Mr. Christian ordered him to leave and became belligerent when he did not comply. He was backing up as Mr. Christian kept advancing toward him. When Vallier turned to leave, Mr. Christian hit him with a stick, knocking him to the ground. Vallier said that Mr. Christian kept hitting him while he was on the ground and that he feared Mr. Christian was going to kill him. Vallier then pulled out a pistol and shot Mr. Christian.
Vallier further testified that Mrs. Christian and Charlisa ran into the house and he hit the door and it came open. Mrs. Christian and Charlisa were struggling for control of a shotgun. When Mrs. Christian got control of the shotgun, she struck defendant on the head with it. Vallier claims that as he was trying to take the shotgun *1171 away from Mrs. Christian his pistol accidentally fired hitting Mrs. Christian in the neck. He also testified that he was going to wait for the police to arrive, but Charlisa made him leave because she feared he was going to be killed if he stayed. He testified that he left with Charlisa voluntarily accompanying and helping him. He claims that Mr. Christian was alive when he left because he heard Mr. Christian mumbling.
Yallier’s brother, Darrell, testified that Vallier had several scars and scratches on his back and compared the scratches to knife wounds. He also noticed the cut on Vallier’s head.
We find Vallier’s testimony is not consistent with the evidence presented at trial. He said he was 15 to 20 feet from the front porch when he shot Mr. Christian. However, two .25 caliber shell casings were found on the porch. He also testified that he wanted to wait for the police, yet when the police placed a spotlight on him on the Vermilion River Bridge he fled. Also, he testified that he went to the Christian residence to give Charlisa some pictures of their daughter’s christening. Charlisa testified that she never received any such pictures and that no photographs were taken at the christening.
After reviewing the evidence in accordance with the standard provided in Jackson v. Virginia, supra, and adopted by this court, we find that the State met the requisite burden of proof. Based on the evidence presented at trial, a rational trier of fact could have found, beyond a reasonable doubt, that the State proved the homicide was not committed in self-defense. Furthermore, we find that the evidence shows that Vallier was the aggressor.
ASSIGNMENT OF ERROR NUMBER TWO
In Vallier’s second assignment of error, he contends there are errors discoverable by mere inspection of the pleadings and proceedings and that these errors are patent on the face of the record.
LSA-C.Cr.P. Art. 920 provides in pertinent part: “The following matters and no others shall be considered on appeal: ... (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.” A thorough review of the pleadings and proceedings has revealed no errors patent on the face of the record. Therefore, Vallier’s second assignment of error is without merit.
For the foregoing reasons, the conviction of defendant, Donald Harvey Vallier, is affirmed.
AFFIRMED.