362 So.2d 737 (1978)
STATE of Louisiana
v.
David P. RACHAL.
No. 61619.
Supreme Court of Louisiana.
September 5, 1978.
Andrew Jack Bennett, Jr., Bennett & McLaughlin, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown,
*738 Dist. Atty., Marilyn C. Castle, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant appeals his conviction of manslaughter, La.R.S. 14:31 (1973), and his sentence (as a multiple offender, La.R.S. 15:529.1) of thirty-two years at hard labor.
Upon his appeal, the defendant relies upon his Assignments of Error Nos. 18, 20, and 23. These assignments arise out of the prosecutor's mid-trial misuse of the district attorney's investigative subpoena powers under La.C.Cr.P. art. 66. By use of such subpoena powers not authorized by statute, the prosecutor secured unilateral discovery of the test results and test data of a psychologist retained by the defendant in connection with his plea of "not guilty by reason of insanity."
Context Facts
The defendant had been charged with first-degree murder. La.R.S. 14:30 (1976). He pleaded not guilty and not guilty by reason of insanity.
No sanity commission was requested or ordered. Apparently, the state conducted no mental examination of the accused prior to the trial in connection with the charge.
The defense, however, retained Dr. Linda Floyd, a psychologist, to examine the accused and conduct certain psychological tests upon him. She spent about 18 hours of time interviewing and testing him. As a result, she had formulated prior to trial the test results on numerous psychological tests, including both objective and subjective data.
The trial of the case commenced on June 20, 1977. The defendant's list of witnesses disclosed that Dr. Floyd was to be subpoenaed along with the test results of her examinations.
On June 22, 1977, during the jury selection process (but of course out of the presence of the selected and prospective jurors), the prosecutor filed a motion to require the defendant to submit to a psychiatric examination by Dr. Frank Silva. La.C.Cr.P. art. 646. See Note of evidence 1c, Volume III. The defendant objected to this as untimely. The district attorney said it was necessary because the defendant's expert, Dr. Floyd, had refused to inform him of her test results when he had telephoned her. The trial court overruled the objection, and the examination was ordered.[1]
At the same hearing, the district attorney moved for a subpoena to obtain Dr. Floyd's test data and tests results, so that they could be turned over to a psychologist selected by the state for his evaluation and opinion. The defendant's objection to this motion was likewise overruled.
At this point, we should note that the subpoena was requested by alleged authority of La.C.Cr.P. art. 66, which requires the person subpoenaed to respond directly to the district attorney. It was not sought under the authority of La.C.Cr.P. art. 732, which orders the person subpoenaed to produce documents or exhibits at the trial or hearing before the judge (who then might rule upon questions of privilege and work product (such as here urged, before ordering the documents turned over to the opposing party).
In execution of the subpoena, two investigators appeared at Dr. Floyd's apartment while she was dressing, preparing for lunch, and attempting to meet a twelve noon professional appointment. The investigators requested her test results, which she had at the apartment, and also the testing data, which was located elsewhere. They insisted upon her turning over the material subpoenaed without delay, so the psychologist felt obliged to cancel her noon appointment and to go with the investigators while they copied her test results and data. Note of evidence 1b, Volume III.
*739 The prosecutor secured the materials from his investigators and turned them over for evaluation to Dr. Richard Rolston, a practitioner of clinical psychology. Over defense objection that his testimony was on the basis of illegally seized matter, this psychologist testified for the state on rebuttal; his opinion was based primarily upon Dr. Floyd's test results, although partially upon a pre-offense interview with the accused in connection with another matter.
Applicable Legal Principles
La.C.Cr.P. art. 66 authorizes the district attorney to secure a subpoena or subpoena duces tecum ordering a person to appear before questioning at a time and place set by the prosecution "concerning any offense under investigation by him." [2] The official revision comment concerning this power, available to the prosecutor in only a few American states, indicates that its contemplated use was during the investigation of an offense prior to a formal charge, in lieu of grand jury examination of the witness. See Bennett, The 1966 Code of Criminal Procedure, 27 La.L.Rev. 175, 177-78 (1967). At least one decision indicates, however, that the use of this exceptional power[3] has been extended to requiring pre-trial appearance of witnesses, in connection with a continuing investigation of the offense prior to its trial. State v. Whitsell, 262 La. 165, 262 So.2d 509 (1972).[4]
Neither the wording nor the indicated intent of the code article contemplate its use for the purposes here shown: to discover, after the trial has commenced, the test results, test data, and conclusions of an expert witness (a psychologist) who examined the defendant in preparation for trial in connection with his defense of insanity. The exceptional subpoena power granted the district attorney by Article 66 for purposes of pre-charge investigation of an offense was not intended to afford the prosecutor a private examination of the heart of the evidence secured by the defendant, after prosecution has been instituted, in preparation for his defense at the trial of his guilt or innocence.[5]
The state's unauthorized compulsory discovery of details of the defense case by this *740 illegal seizure of test data and test results thus raises several serious issues. These include:
The exploitation of this illegal seizure by turning over (for counter-evaluation by a state psychologist) of the test results, test data, and conclusions derived by the defendant's psychologist from her eighteen hours of examination, see Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920);
The state's misuse of La.C.Cr.P. art. 66 so as to give it unilateral discovery of details of the defense case, when at the time the defendant had no reciprocal discovery rights, see Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973); and
The violation of due process rights to proper presentation of a defense through the potential intimidation of a key defense witness (the psychologist) by the arbitrary and illegal seizure from her of the test results and test data, cf. Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972).
Assignments of Error
Nevertheless, despite the arbitrary misuse of La.C.Cr.P. art. 66 by the state in this case, we find no reversible error to be presented by the defendant's assignments, for the following reasons:
Assignments 18 and 23: As the defendant contends, the state was not authorized to secure in the manner shown the defense psychologist's test data and test results for counter-evaluation by the state psychiatrist, at least prior to proper subpoena or until the defense psychologist testified and the material was introduced into evidence, by cross-examination or otherwise. However, prior to the testimony of the state's psychologist, the defendant himself introduced the test results into evidence, see Tr. 299, 403, and the state psychiatrist's testimony (even though based upon a pre-introduction analysis of this material) was thus based upon his analysis of material properly in evidence by reason of such introduction.
Assignment 20: We find no error in the trial court ruling that the defendant's due process defense rights were not prejudiced by the improper harassment of the defense psychologist, nor the trial court's finding that this witness's testimony was not influenced or impaired by the intimidating action of the prosecutor in inconveniencing her by the illegal subpoena because she had refused to cooperate with the prosecution and to disclose her test data and test results prepared for the accused in connection with his defense.
Conclusion
We find no reversible error for the reasons stated, nor any need to invoke or enforce an exclusionary rule in the absence of repetition or further abuse of the investigative subpoena powers granted prosecutors by La.C.Cr.P. art. 66.
We therefore affirm the conviction and sentence.
AFFIRMED.
SUMMER, J., concurs.
DIXON, J., dissents.
NOTES
[1] Dr. Silva testified for the state on rebuttal as to the results of his psychiatric examination. No further objection to his testimony was made on the basis that this belated request had deprived the accused of an opportunity to secure rebutting psychiatric evaluation or testimony; the defendant apparently being content to rely upon his own psychologist's evaluation.
[2] La.C.Cr.P. art. 66 provides in full:

"Upon written motion of the attorney general or district attorney setting forth reasonable grounds therefor, the court may order the clerk to issue subpoenas directed to the persons named in the motion, ordering them to appear at a time and place designated in the order, for questioning by the attorney general or district attorney respectively concerning any offense under investigation by him. The court may also order the issuance of a subpoena duces tecum.
"The contumacious failure or refusal of the person subpoenaed to appear is punishable as a contempt of court.
"The attorney general or district attorney, respectively, may determine who shall be present during the examination and may order all persons excluded, except counsel for the person subpoenaed."
[3] After the prosecution has been instituted by a formal charge, the code apparently contemplates that subpoenas for either party should ordinarily be issued under La.C.Cr.P. arts. 731-37, which require the witness to appear (not, as in La.C.Cr.P. art. 66, before the prosecutor without the presence of a judge).
[4] We do not necessarily disapprove at this time Whitsell's implied construction of Article 66 so as to permit the state to subpoena witnesses for questioning even after the prosecution has been instituted by formal charge. Nevertheless, Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), seems to require reciprocal discovery rights for the defendant, where the state is afforded formal discovery. If this be so, we are uncertain that, if the implied construction by Whitsell is correct, the statute's failure to afford similar pre-trial discovery rights to a defendant (or, for instance, to permit his counsel (as well as the subpoenaed witness's) to be present for the compulsory private examination by the district attorney) does not raise valid issues of unconstitutionality, despite Whitsell's (pre-Wardius) rejection of them.
[5] Although this case was tried before formal criminal discovery was enacted by Act 515 of 1977, we note that, even under the (thus far limited) discovery provided by that act, the state was not authorized to proceed as it did. La.C.Cr.P. art. 725 (1977) authorizes the state to secure results of physical and mental examinations of a defendant only if he has previously moved for and secured an order under La.C. Cr.P. art. 718 (1977) for the results of similar examinations in the state's possession.