438 So.2d 1277 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Daryl SYLVESTER, Defendant-Appellant.
No. CR83-214.
Court of Appeal of Louisiana, Third Circuit.
October 12, 1983.
*1279 Thomas L. Lorenzi, Nick Pizzolatto, Jr., Lake Charles, for defendant-appellant.
Leonard K. Knapp, Jr., Dist. Atty., and Charles W. Richard, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before STOKER, LABORDE and KNOLL, JJ.
STOKER, Judge.
Defendant, Daryl Sylvester, was convicted of second degree murder in violation of LSA-R.S. 14:30.1 in connection with the death of his girlfriend, Katherine Barker. He was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence.

FACTS
Defendant, Daryl Sylvester, had been living with Katherine Barker, the victim, for ten or eleven months. During this time, the couple had separated six or seven times because of frequent disagreements. On the day of the incident, February 28, 1980, the defendant was living at Chennault Palms Apartments in Lake Charles, Louisiana. Ms. Barker had moved out of the apartment about two weeks earlier as a result of their most recent disagreement.
On February 28, 1980, at approximately 6:15 PM, defendant returned to the apartment with an acquaintance, Kenneth Buchannan. The two had been fishing. Defendant was armed with a 9 mm automatic pistol. He used it during the fishing trip to shoot snakes. They, together with David Buchannan, a neighbor, entered defendant's apartment and found a note Ms. Barker had left on the kitchen table advising defendant to get out of the apartment and not to do any damage or she would kill him. Ms. Barker was not present in the apartment.
The three went to a convenience store to purchase some beer and, upon returning, saw Ms. Barker's car parked in front of the apartment complex. Defendant waited for Ms. Barker at the front of the building in an apparent attempt to speak to her. As she returned to her car, the defendant approached her. He was still armed with the 9 mm pistol. Defendant approached the driver's side of the car. Ms. Barker entered her car and partially rolled down the window on the driver's side so they could talk. Defendant testified that Katherine Barker threatened to kill him, turned to the right, picked up a gun and pointed it at him. Defendant drew his pistol and fired twice through the window, fatally striking Ms. Barker. Katherine Barker got out of the passenger side of the car, collapsed and died. The defendant was held by the apartment complex security guard until taken into custody by the Sheriff's Department.
Defendant has never denied shooting Katherine Barker. His sole contention is that he was justified in killing her in self-defense. He has appealed from his conviction and sentence and has perfected three assignments of error. For the reasons assigned below, we affirm.

ASSIGNMENT OF ERROR NO. 1
This assignment of error deals with the trial court's refusal to allow evidence of prior specific threats by the victim against the defendant. Defendant sought to testify that on a prior occasion the victim had attempted to kill him by trying to run over him with a car. The State's objection to this testimony was sustained. The defendant claims this evidence was admissible in accordance with LSA-R.S. 15:482, infra.
Evidence of the victim's dangerous character or threats against the accused supports a plea of self-defense because it is relevant to show that defendant's apprehension of danger was reasonable and to show the victim was the aggressor. State v. Edwards, 420 So.2d 663 (La.1982). The *1280 foundation for the admissibility of such evidence is found in LSA-R.S. 15:482:
"In the absence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against the accused is not admissible."
The issue is whether or not defendant satisfied this foundation requirement by producing evidence that the victim had made a hostile demonstration or overt act against defendant at the time of the incident. Such a showing was a prerequisite to introducing evidence of the victim's dangerous character or of her threats against the defendant.
The term "overt act" means any act of the victim which manifests to the mind of a reasonable person a present intention to kill or do serious bodily harm to the defendant at the time the principal offense occurred. State v. Edwards, supra. The test to be met is whether there was "appreciable evidence of an overt act or hostile demonstration." State v. Lee, 331 So.2d 455 (La.1975).
In State v. Lee, supra, the Louisiana Supreme Court found that testimony from two defense eyewitnesses who saw the victim drop a knife after defendant shot him was sufficient to meet the "appreciable evidence" test. In State v. Edwards, supra, the Louisiana Supreme Court found that physical evidence which supported defendant's own testimony was sufficient to meet the "appreciable evidence" test.
In the instant case, the "overt act" or "hostile demonstration" alleged by the defendant is his claim that as he was talking with the victim, who was seated in her car, she told him that she was going to kill him, then turned and picked up a gun and pointed it at him. The sole evidence to support this version is defendant's own testimony. There were no eyewitnesses who could corroborate this, and the physical evidence conflicts with defendant's testimony as well. The defendant has failed to meet the "appreciable evidence" test. The trial court properly refused to allow defendant's testimony concerning prior specific threats by the victim against the defendant. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 2
This assignment urges that the trial judge gave the appearance of commenting unfavorably upon defense evidence in the presence of the jury. The defendant alleges that various rulings of the trial court taken together gave the appearance that something was "wrong" with the testimony of several defense witnesses, including defendant himself, that his evidence was not "good" evidence, and that the judge did not believe the jury should hear it. The defense feels this led the jury to view suspiciously his most important evidence, thus denying defendant a fair and impartial trial.
In order to prove self-defense, defense counsel sought to adduce testimony from the defendant and several defense witnesses concerning the violent and hostile nature of the victim. (See State v. Lee, supra, for the relevance of this evidence.) During defendant's testimony-in-chief, counsel attempted to elicit information concerning defendant's prior knowledge of the victim's attempts to kill her ex-husband and to kill a police officer. A hearsay objection by the State resulted in a bench conference. The question objected to was: "Did Katherine Barker ever talk to you about her ex-husband?" The jury remained in the courtroom. The objection was sustained, and defense counsel abandoned this line of questioning.
Carlton Barker, Sr., ex-husband of the victim, was the next defense witness called. Defendant tried to have Mr. Barker testify concerning the victim's past attempts to kill him. The State objected, and the court immediately ordered the jury removed. The ground for the objection was that the testimony concerned specific acts of violence not admissible as evidence of general reputation under LSA-R.S. 15:479. After an extended argument, the objection was sustained.
*1281 The jury was brought back into the courtroom. As decided in the bench conference, Mr. Barker was excused as a witness and defendant was recalled for the limited purpose of laying a foundation. His testimony, which again concerned his prior knowledge of the victim's attempts to kill her ex-husband and to kill a police officer, was now received without objection. The form of the question asked to elicit this testimony differed from the question previously directed to defendant. The record reflects the trial judge's concern with protecting the defendant's right to present a defense. Mr. Barker was recalled and continued his testimony. The other defense witnesses were similarly permitted to testify. Through this sequence of events, defendant contends that the trial judge erred by giving the appearance of commenting unfavorably upon his evidence in the presence of the jury.
LSA-C.Cr.P. art. 772 provides:
"The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."
Although C.Cr.P. art. 772 prohibits any comment upon the evidence by the judge in the jury's presence, a ruling on the admissibility of evidence and the remarks by a trial judge giving reasons for his rulings on objections are not objectionable as comments on the case unless such remarks are unfair or prejudicial. State v. Toomer, 395 So.2d 1320 (La.1981). After the State's hearsay objection to defendant's testimony, the record indicates that the trial judge's sole comment was, "It depends on what the next question is, I believe. I'll let that question go by, or that answer." After this comment, defense counsel asked to approach the bench. A bench conference took place after which defense counsel pursued a different line of questioning. This remark clearly cannot be construed as an unfair or prejudicial comment on the evidence, and is controlled by State v. Toomer, supra. When the State objected to Mr. Barker's testimony concerning the victim's acts of violence against him, the record indicates that the trial judge made no comments whatsoever. In fact, after the objection was made, the trial judge immediately ordered that the jury be removed. The jury's removal was clearly an indication of substantial safeguards taken by the trial judge to protect the defendant. Standing alone, neither of these two occurrences violated C.Cr.P. art. 772.
After the jury returned to the courtroom, the defendant was recalled to lay a foundation for Mr. Barker's testimony. Defendant did so without objection. Then Mr. Barker was recalled and continued his testimony. Defendant seemingly tries to tie all of these events together, contending that when viewed as whole they amount to unfavorable comment upon the evidence. The thrust of his argument seems to go to the subject matter of the evidence sought to be introduced. In each instance, defense counsel attempted to introduce evidence of the defendant's prior knowledge of violent acts of the victim towards others. Defendant asserts that the trial judge gave the appearance of commenting unfavorably upon the evidence by first sustaining two objections to its admission, then having the defendant and then Mr. Barker recalled to testify concerning these same matters, and thereafter permitting the testimony to come into evidence. The contention that the jury would view these rulings by the trial court as an unfavorable comment upon defendant's evidence is without merit, especially in view of the fact that this evidence did come in.

ASSIGNMENT OF ERROR NO. 3
In this assignment, defendant contends that the jury's verdict, finding him guilty of second degree murder in violation of LSA-R.S. 14:30.1, is in error. The basis for this contention is that the State's evidence was insufficient to establish that the killing was not committed in self-defense and that defendant was not the aggressor. A defendant in a homicide prosecution who asserts that he acted in self-defense does *1282 not have the burden of proof on that issue because the State bears the burden of establishing beyond a reasonable doubt that the homicide was not perpetrated in self-defense. State v. Brown, 414 So.2d 726 (La. 1982).
In order to afford a criminal defendant due process, the relevant inquiry on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact would have found beyond a reasonable doubt that the homicide was not committed in self-defense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), State v. Brown, supra.
Since defendant freely admits to killing the victim by shooting her, the focus of our inquiry is on the sufficiency of the evidence to negate self-defense and that defendant was the aggressor.
LSA-R.S. 14:20 reads in pertinent part as follows:
"A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; ..."
LSA-R.S. 14:21 provides:
"A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict."
Although we have previously stated the facts, we find it necessary at this point to provide a more detailed statement for review of this assignment. No room for doubt exists regarding the victim's capacity for violence. Several witnesses testified that she attempted to kill or seriously injure them. Defendant testified that he knew of at least some of these incidents prior to the day of the shooting. There is also evidence of the victim's prior threats against defendant. Defendant testified that a few days before the shooting, the victim showed him a gun she had purchased and threatened to kill him. On the day of the shooting, defendant found a note left by the victim in which she threatened to kill him if he damaged her property. It is evident that the couple had a stormy relationship with frequent disagreements resulting in several separations. Finally, investigators discovered a pistol partially protruding from under and between the front seats of the victim's car when it was searched shortly after the shooting.
On the other hand, there is evidence indicating that defendant himself was capable of violent acts. The victim's sister testified that on one occasion the defendant had apparently broken a television set and injured the victim's arm after having had an argument with the victim. It also seems that defendant took some rings belonging to the victim just prior to their most recent separation. These rings were mentioned in the note left by the victim. Viewed as a whole, the evidence clearly indicates that defendant and the victim could not get along.
With the relationship broken off and while staying with her sister, the victim returned to the apartment to remove some clothing. She left a note telling defendant to leave her alone, to get out of her life, and not to damage any of her property or she would kill him. The defendant read this note upon returning to the apartment after a fishing trip. He testified that he went fishing during the middle of February and carried a gun so he could shoot snakes.
After reading the note, he went to a Fas-stop store with friends to get some beer. When they returned to the apartment, defendant noticed the victim's car parked in front of the apartment building. The defendant, still armed with the pistol, waited in front of the building for Katherine Barker to return to her car.
When Katherine Barker exited from the side of the building and approached her car, she passed a security guard who was about to enter his car. Apparently after noticing defendant in front of the building, she *1283 stopped the security guard and asked him to wait a moment. She then proceeded toward her car with the security guard following at a distance.
The defendant had begun to approach her and indicated that he wanted to talk. She at first refused, but defendant persisted, and after she entered her car he further approached and positioned himself outside of the car opposite the driver's side window.
The security guard did not hear any loud talking or arguments, but immediately after defendant reached the driver's side door the security guard heard two shots. According to defendant, she threatened to kill him, turned to the right and picked up a gun, turned back to face him and then pointed the gun at him. Defendant then pulled his gun out of his pants and fired two shots before she was able to fire even one shot.
The coroner testified that one bullet entered on the lower left side of the back in front of the chest near the mid-line. The other bullet entered at about mid-chest and traveled in the direction of the right shoulder and exited toward the armpit. This physical evidence indicates that the victim was moving toward the right and away from defendant, and not facing him as he contends. The investigating officers' testimony indicates that the victim's gun was positioned under and between the front seat. The victim was right-handed. It would seem highly improbable (assuming that the victim had the gun in her hand in the first place) that she would have sought to reposition the gun under and between the front seats while she was engaged in an attempt to get away from the defendant on the right side of the vehicle. Assuming that she had already been shot, it stretches the imagination even further to consider that such a person could so position any gun.
Defendant, Daryl Sylvester, knew the victim's reputation for violence. He knew that they were not getting along and that she did not want any contact with him. Yet, knowing this, he confronted her that night armed with a pistol and claims he acted in self-defense. The physical evidence standing alone strongly indicates that decedent never drew a gun on the defendant, and that he was the aggressor.
In viewing the evidence in the light most favorable to the prosecution, the jury had sufficient evidence to conclude beyond a reasonable doubt that the state proved the essential elements of the crime. This assignment is also without merit.

DECREE
For the above reasons the conviction and sentence of the defendant are affirmed.
AFFIRMED.