487 So.2d 1233 (1986)
STATE of Louisiana, Plaintiff-Appellee,
v.
James R. MAGEE, Defendant-Appellant.
No. CR85-589.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1986.
Writ Denied May 30, 1986.
*1234 James S. Gravel, Gravel & Van Dyke, Alexandria, for defendant-appellant.
R. Greg Fowler, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before STOKER, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
Defendant, James R. Magee, was convicted of second degree murder resulting from the shooting death of Robert Tate Henry. LSA-R.S. 14:30.1(1). He appealed the conviction based on seven assignments of error. Two assignments, Nos. 3 and 5, were not argued and are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982). The remaining assignments will be considered herein.
FACTS
At about 3:30 A.M. on April 14, 1984, the victim, who was Magee's roommate, was killed by a .12 gauge shotgun blast fired by Magee. The killing took place in the defendant's bedroom. The defendant, Magee, told the police shortly after the incident that Henry had come home mad and started attacking him for no apparent reason. The defendant stated he retreated to his bedroom and armed himself with an old shotgun, to ward off his attacker. According to Magee's story, Henry then "swatted" the muzzle of the shotgun, causing it to accidentally discharge, killing him instantly. The defendant said he then called the police and an ambulance and his former father-in-law. There were no witnesses to the shooting.
ASSIGNMENTS OF ERROR NOS. 1 AND 2:
By these assignments the defendant contends that the trial court erred in allowing the introduction of oral statements made by him to Assistant District Attorney Bob Levy and Detective Mark Baden shortly after the killing. It is the defendant's position that even though the state had given written notice as provided by La.C.Cr.P. art. 768 on the day of trial, prior to commencement of trial, the statements were *1235 not admissible because they were not included in the state's earlier answer to a motion for a bill of particulars.
The defendant filed a motion for a bill of particulars six months before trial, requesting that the state inform him of any oral or written statements made by the defendant which the state intended to use at trial. The state responded by attaching a copy of one oral recorded statement later transcribed by the sheriff's department.
At trial, before the opening statement, the state presented the defense with a written notice, entitled "Article 768 Notice", announcing its intent to use two additional statements made by the defendant, to which the defense objected.
The state introduced these statements in an effort to show what it argued were inconsistencies between the defendant's oral recorded statement and his oral unrecorded statements. The state used these inconsistencies to support its argument that the defendant's claim of self-defense was fabricated and that the defendant was not credible.
It is the defendant's contention that the thrust of the state's case consisted of an attack on the details of the defendant's statement, and that therefore the failure to exclude the two oral statements was reversible error. When defendant was unsuccessful in obtaining the exclusion of the oral statements, he asked for a continuance, which was also denied.
In its rulings, the trial judge relied on State v. Jenkins, 340 So.2d 157 (La.1976). That case held that the state is not required to reveal, in a bill of particulars, its possession or its intent to use oral inculpatory statements by an accused. However, in Jenkins the court recognized the rule it laid down in State v. Boothe, 310 So.2d 826 (La.1975) which said, without ruling whether or not such oral statements are discoverable by a bill of particulars, that the state cannot mislead the defendant by its answer to a bill of particulars by saying it has no statements and then try to introduce oral statements at trial.
The present case, like Jenkins, is distinguishable from Boothe. In Boothe the state answered the bill of particulars saying it had no statements, implying it had none whatsoever, either oral or written. As a result, the defendant was lulled into a misapprehension of the strength of the state's case and suffered severe prejudice when oral inculpatory statements were subsequently introduced. In Jenkins the state responded that it had no written, taped or videotaped statements. The court held the response did not imply that the state had no oral statements.
Because the state is not required to inform defendant in its bill of particulars of its possession and intended use of oral inculpatory statements nor was the defendant prejudicially misled by the state's answer to its bill of particulars the assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 4
The defendant urges the trial court erred when it admitted blood and urine tests at trial which showed, according to the testimony, that the victim had in his system at the time of his death between three and seven beers or mixed drinks, and no drugs. The defendant contends that the state failed to lay a proper foundation to admit this evidence. Specifically, the defendant argues that there was no showing that the person who took the samples from the victim was qualified, that the proper procedure was used, and that the samples were properly maintained and protected. The effect of the improper admission of this evidence, according to this assignment of error, was to heavily damage the defendant's credibility, which was the crux of his defense, and he was therefore irreparably and unjustly prejudiced. The defendant had indicated in his recorded police interview that the deceased had been drinking heavily.
The urine test results were never brought up in testimony by the state. These results, which showed that there were no drugs in the victim's urine, were brought out in cross-examination by the *1236 defense. There is therefore no basis for his objection to the admissibility of the urine test results.
The blood sample was taken by Deputy Coroner Melder, who was not called to testify; thus, none of his qualifications or credentials were even shown. Prior to the admission of the test results, Dr. John Maxwell, who examined the victim's body, testified that Mr. Melder (of the coroner's office) had obtained the samples from the victim at the time of the autopsy. Detective Baden also testified that he was present during the autopsy and that Mr. Melder took blood samples from the victim's stomach area and neck. He explained that blood was taken from these areas, because the heart, where blood samples are normally taken, was blown apart from the gunshot.
The defendant argues that since Mr. Melder's qualifications were not shown, the blood sample is inadmissible. He relies on La.R.S. 32:663 and 664 which say when a person submits to a blood test under the driving while intoxicated statute, only a qualified technician, physician or registered nurse or chemist can withdraw the blood. The defendant's argument is that if these prerequisites to the admission of test results apply in the lesser offense of driving while intoxicated, they should be applied to the more serious offense of murder.
The defendant's reliance on the motor vehicle statute is misplaced. Rigid prerequisites are given in that statute because the results of the test give rise to statutory presumptions of guilt of the defendant from whom the blood samples were taken. That is in no way the case here, and the statute is clearly inapplicable.
The blood sample was simply demonstrative evidence. Before demonstrative evidence can be admitted it must be shown that more probably than not, it is connected to the case. That foundation can be laid by establishing a chain of custody of the evidence or by visual identification. Once that foundation is established, the weight to be given the evidence is a question for the jury. State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981).
The evidence here does show more probably than not the blood taken and tested was that of the victim. The blood samples were identified by detective Mark Baden who was present when they were taken by Mr. Melder. He testified to having given the samples to Mr. T.J. Shuflin of the crime lab who in turn testified as to the receipt and testing of the samples.
Shuflin testified as to his interpretation of the results of the blood tests performed by him. He was tendered as an expert in the analysis of blood and urine by the state without objection by the defendant. Mr. Shuflin described the method used to analyze the blood, and concluded the results translated to the presence of approximately three to seven drinks.
The testimony was properly admitted and after extensive cross-examination by the defendant the weight of the evidence was properly before the jury. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 6
By this assignment of error the defendant contends the trial judge erred by refusing to read the negligent homicide statute to the jury, arguing that the statute was not asked to be given as a responsive verdict but only to describe the crime of negligent homicide.
The defendant relies on State v. Marse, 365 So.2d 1319 (La.1978). In that case the Louisiana Supreme Court ruled that it was error (but harmless) for the trial judge to not give the requested special charge on the law of negligent homicide. There was evidence in Marse from which the jury could have inferred that the defendant was guilty of negligent homicide but not manslaughter or murder. The jury in that case returned a verdict of manslaughter and although the court held it was error to not give the charge, it was held not to be reversible error because there were other instructions given by the trial judge, coupled with defense counsel's closing argument, *1237 which informed the jury of its duty to acquit defendant if the evidence warranted only a finding of negligent homicide.
In this case, the jury found the defendant guilty of second-degree murder, not manslaughter as in Marse. Furthermore, the defendant points to no evidence from which the jury could have concluded he was guilty of negligent homicide and not murder. The jury having found the defendant guilty of murder and not manslaughter necessarily means they found the defendant had the specific intent to kill or cause great bodily harm. There is no reason to think the finding of such specific intent would be different if the jury had been instructed on the law of negligent homicide. See also, State v. Beck, 445 So.2d 470 (La.App. 2nd Cir.1984), writ denied, 446 So.2d 315 (La.1984).
ASSIGNMENT OF ERROR NO. 7:
By this assignment of error the defendant contends the trial court erred by failing to grant the defendant's request for a post judgment verdict of acquittal and/or a new trial based on an insufficiency of the evidence to convict.
A conviction can stand only if viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In addition, Louisiana's circumstantial evidence rule says, assuming every fact to be proved that the evidence tends to prove, in order to convict it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438. State v. Graham, 422 So.2d 123 (La.1982), appeal dismissed, 461 U.S. 750, 103 S.Ct. 2419, 77 L.Ed.2d 1309 (1983).
In this case, the jury reasonably rejected the defendant's contentions that the shotgun was accidentally discharged by the victim having grabbed or swatted the muzzle or that the shooting was in self-defense. The state presented the jury with evidence reasonably sufficient to exclude every hypothesis of innocence.
Evidence was presented in testimony by the pathologist and the ballistics expert, as to the distance and trajectory of the shooting, which tended to prove the incident could not have occurred the way the defendant said it had occurred.
Furthermore, the state presented evidence that there were no signs of any confrontation or violence to support any contention of self-defense, nor was the victim armed with any weapon.
A defense witness also testified, inconsistent with defendant's statement, that the victim had arrived home while the witness and others were still there and there was no sign of any violent disagreement at that time. The defendant in his statement said the victim arrived home after the guests had left and had entered the house violently and aggressively.
Having been presented with this evidence, the jury could reasonably have chosen to disbelieve the defendant's version of the incident and find that the defendant specifically intended to kill the victim. This assignment is without merit.
The conviction is affirmed.
AFFIRMED.