617 So.2d 557 (1993)
STATE of Louisiana
v.
Leon WILLIAMS.
No. Cr92-1258.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1993.
*558 Louis Goodwin Garrot, III, Abbeville, for plaintiff-appellee State of La.
*559 John DiGiulio, Baton Rouge, Ronny Melebeck, Abbeville, for defendant-appellant Leon Williams.
Before GUIDRY, KNOLL and WOODARD, JJ.
GUIDRY, Judge.
The defendant, Leon Williams, was charged by grand jury indictment with the second degree murder of Gerald Levy, in violation of La.R.S. 14:30.1. After a trial by a jury of twelve, the defendant was found guilty as charged and later sentenced to the mandatory term of life imprisonment without benefit of probation, parole or suspension of sentence. On appeal, the defendant raises five assignments of error concerning the composition of the jury venire, the abuse of an Article 66 subpoena, an alleged Brady violation, the exclusion of certain testimony and insufficiency of the evidence.

FACTS
In the late afternoon of Sunday, March 17, 1991, in a residential area of Abbeville, the defendant and Gerald Levy had an argument which resulted in the defendant, while armed with a four foot long pipe, chasing Levy for approximately a block. After the chase, the defendant went home, armed himself with a .357 magnum handgun and returned to confront Levy a second time. On his way, the defendant told Allen Roy Landry he was "going down there and kill me a nigger".
When the defendant arrived at the corner where Levy was standing with others, he pulled out the gun, pointed it at the victim and, after a brief exchange of words, began to chase him again. The second chase was brief and after about one-half block the defendant abandoned the chase and began to return to his home. He stopped beside a Lincoln Continental belonging to Terry Brailey, put his gun on the hood of the car near the edge closest to him, and began to adjust his clothing. While defendant was tucking in his shirt, Levy approached the opposite side of the car and banged his hands on the car hood. It is disputed whether or not the victim made an actual or faked move for the defendant's gun or even leaned over the hood of the car. It is not disputed that the defendant picked up the gun and shot Levy in the face. Some witnesses heard the defendant ask Levy, "do you want it", before he shot the victim. Other witnesses denied that any words were spoken. After the shooting, the defendant walked or ran from the scene to his mother's house about two blocks away where he was later arrested.
The shooting occurred in front of the home of Albertine Brailey who gave testimony that she saw the victim "tempt" or fake for the gun. However, in an earlier taped statement she told the prosecutor that the victim never made a move for the gun. At trial she admitted she could see only the victim's back and his arms, and she could not tell if he was actually trying to reach for the gun.
Other witnesses at trial stated that, while Williams was tucking in his shirt, Levy approached the opposite side of the car and either hit, tapped or banged on the hood with both hands. These witnesses agreed that at that point Williams picked up the revolver, the victim took two or three steps backward and Williams fired one shot.
The defendant's twelve year old son, Latora Darby, was with him at the time of the shooting. Latora was the only witness who claimed the victim was taunting the defendant moments before the shooting and that the victim was crawling upon the hood of the car.
Dr. Emile Laga, who performed the autopsy, testified that the bullet entered the victim's lower left jaw, exited on the right side of the neck, and had a twenty degree angle indicating that the bullet was fired upward. This finding contradicted the defense claim that the victim was lunging toward the defendant when he was shot. Finally, a firearms expert, David Epstein, testified that the gun weighed two pounds and needed from seven to fifteen pounds of force to pull the trigger and fire the gun. *560 This evidence served to contradict defendant's claim of accidental discharge.

ERRORS PATENT
A review of the record reveals two errors patent: failure to comply with La.C.Cr.P. art. 930.8 and failure to waive the twenty-four hour sentencing delay after denial of defendant's motion for a new trial.
La.C.Cr.P. art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows that the court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or to remand the case for resentencing. La.C.Cr.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under La. C.Cr.P. art. 914 or 922, so prescription is not yet running. We will direct the trial court to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof in the record that the defendant received the notice. See State v. Cox, 604 So.2d 189 (La.App.2d Cir.1992); State v. Stephens, 604 So.2d 203 (La. App.2d Cir.1992).
Defendant filed a motion for new trial which was denied by the trial judge who promptly sentenced defendant to the statutorily mandated sentence for second degree murder. There is no evidence in the record that the defendant specifically waived his right to the 24 hour delay before sentencing provided in La.C.Cr.P. art. 873. However, we note that not only did counsel for defendant say he was ready to proceed with sentencing but that the motion for new trial was heard at the time previously scheduled for sentencing. In any event, this error is harmless since the sentence for second degree murder is a mandatory life sentence without benefit of probation, parole or suspension of sentence, and thus defendant suffered no prejudice. Neither of these errors patent constitute reversible error.

ASSIGNMENT OF ERROR NO. 1
By his first assignment of error, the defendant objects to the racial make-up of the petit jury venire. Defendant urges that the trial court erred in failing to ensure that a jury consisting of at least some black jurors was empaneled and suggests that it was impossible to select anything but an all white jury because of the procedures followed. This contention served as the basis for defendant's motion for a new trial.
At the end of jury selection, counsel for defendant objected to the twelve member jury being all white and pointed to the small number of blacks on the venire. The trial court overruled defendant's objection. The trial judge observed that the defendant's objection was not to the panel of jurors selected but to the petit jury venire summoned for the case. The trial court correctly ruled that such objection was untimely and should have been urged prior to jury selection.
The proper procedural vehicle for urging objection that the general or petit jury venire was improperly drawn, selected or constituted is a motion to quash. La. C.Cr.P. art. 532(9); State v. Durr, 343 So.2d 1004, 1007 (La.1977); State v. Collins, 359 So.2d 174, 177 (La.1978); State v. Ramos, 390 So.2d 1262, 1263 (La.1980); State v. Bruce, 477 So.2d 817, 818 (La.App. 5th Cir.1985); and State v. Wiley, 513 So.2d 849, 860 (La.App. 2d Cir.1987), writ denied, 522 So.2d 1092 (La.1988). This motion must be in writing and filed before trial. La.C.Cr.P. arts. 536, 521, 535(C); State v. Wiley, supra.
In the present case, defendant made an oral objection after jury selection and filed a motion for new trial after the verdict. An objection to the petit jury venire can neither be raised by a motion for new trial nor can it be raised for the first time on appeal. State v. Durr, supra, and State v. Bruce, supra. The failure of a defendant to timely file a motion to quash, contesting the petit jury venire, constitutes a *561 waiver of that objection. State v. Durr, supra.
Even assuming that the defendant was not aware of the objectionable venire prior to the commencement of their examination, the defendant should have objected to the racial composition of the veniremen who were present after roll was called, and before the trial court began to call prospective jurors. Defendant's objection was not properly presented to the trial court and was raised too late for the trial court to take any necessary corrective action. Furthermore, the defendant suffered no prejudice since the evidence of his guilt is overwhelming. See, e.g., State v. Jackson, 480 So.2d 937 (La.App. 2d Cir.1985), writ denied, 484 So.2d 668 (La.1986), reconsideration denied, 488 So.2d 686 (La.1986); and State v. Ketton, 468 So.2d 707 (La.App. 4th Cir.1985). This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
The defendant's second assignment of error concerns the prosecutor's alleged abuse of a pretrial investigative subpoena. La.C.Cr.P. art. 66. The defendant contends that the trial court erred when it denied the defendant's "Motion to Dismiss, Restrict Testimony or for Other Sanctions for Prosecutorial Abuse of La.C.Cr.P. art. 66". This objection was filed before the defendant's trial, and was also urged during trial. Prior to jury selection, the trial judge informed the parties that a ruling on this objection would be made at the time the prosecutor offered the allegedly objectionable evidence.
The issue arose during the testimony of Mrs. Albertine Brailey, a witness called by the defense. The shooting occurred in front of Mrs. Brailey's home while she was looking out of her kitchen window. Mrs. Brailey testified on direct examination that she saw the defendant and Levy standing on opposite sides of a car. She testified that immediately before the shooting, Levy was beating on the car and reaching for the defendant's gun which was on top of the car. She stated that the defendant, in a "quick reaction" grabbed the gun and shot Levy. On cross-examination, Mrs. Brailey stated that she saw the victim "tempting" to get the gun, like he was going to get the gun, but he did not touch it. However, Mrs. Brailey admitted that she could not say for certain that the victim was trying to reach for the gun because his back was turned to her and all she could see was his hands.
The prosecutor asked Mrs. Brailey if she recalled speaking with him before trial and giving a tape-recorded statement. She admitted that she had given her statement. However, Mrs. Brailey responded that if the tape stated that Levy did not make a move to try to grab the gun, the tape was wrong.
At this point, the prosecutor asked to play the taped statement to the jury and the defendant objected. Defendant's objection was based upon his pretrial motion which he converted into a motion to suppress the tape based upon alleged abuse of a La.C.Cr.P. art. 66 subpoena. The prosecutor responded by noting that Mrs. Brailey gave her consent to speak with the prosecutor and to have her statement recorded. The prosecutor observed that Mrs. Brailey had already spoken with the defendant's investigators when she gave the taped statement and nothing she told the prosecutor was not equally available to the defendant's investigators since they had talked with her long before she gave her statement. After Mrs. Brailey answered a few questions, acknowledging she had never refused to speak with the police and had not been questioned earlier by the police, the trial judge overruled the defendant's objection.
In order to obtain a reversal of his conviction, the defendant must establish that the trial court erred and this error prejudiced a substantial right of the defendant. La.C.Cr.P. art. 921. The defendant argues that he was prejudiced because Mrs. Brailey was impeached and without her impeachment, her testimony could have been the most important presented that day because she was in the best position to see what really happened. The defendant concludes that but for Mrs. Brailey's impeachment, *562 the jury may have given greater weight to her testimony and the only reason Mrs. Brailey was impeached was because the Article 66 subpoena was abused.
La.C.Cr.P. art. 66 provides:
Upon written motion of the attorney general or district attorney setting forth reasonable grounds therefor, the court may order the clerk to issue subpoenas directed to the persons named in the motion, ordering them to appear at a time and place designated in the order for questioning by the attorney general or district attorney respectively, concerning any offense under investigation by him. The court may also order the issuance of a subpoena duces tecum.
The contumacious failure or refusal of the person subpoenaed to appear is punishable as a contempt of court.
The attorney general or district attorney, respectively, may determine who shall be present during the examination and may order all persons excluded, except counsel for the person subpoenaed.
The defendant expends much effort quoting selected portions of State v. Rachal, 362 So.2d 737 (La.1978), cert. denied, 440 U.S. 963, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979), which limited a prosecutor's use of an Article 66 subpoena during the trial to obtain the reports of a defendant's expert witness. As the State notes, Rachal is distinguishable because it arose before the 1977 amendments to the discovery articles and the court in Rachal was concerned that the abuse of the Article 66 subpoena would give the State unilateral discovery of the details and strategies of the defendant's case in violation of the holding of Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973).
As the comments to La.C.Cr.P. art. 66 note, the requirement that the prosecutor seek court approval after setting forth reasonable grounds before the subpoena is actually issued answers the only real objection to this subpoena power, that it could be abused by the district attorney. La. C.Cr.P. art. 66, comment (b).
The evidence presented at trial defeats the defendant's claim of prejudice. The State did not use the subpoena to obtain unilateral discovery. The investigators for the defendant had already spoken with Mrs. Brailey. The prosecutor did not use the subpoena to force Mrs. Brailey to speak to him. Mrs. Brailey never refused to speak with the police about the shooting and she was told she did not have to give a statement if she chose not to do so. There is no evidence in the record that the State abused its subpoena power to either intimidate a defense witness or to discover defense strategy.
The argument about the impeachment of Mrs. Brailey is also questionable. Before the taped statement was played to the jury, Mrs. Brailey stated on cross-examination that she was not certain that the victim was reaching for the gun because his back was turned to her and she could only see his hands. Further, Mrs. Brailey stated that she could not hear anything that was said, but rather, was only able to discern some "mumbling" by Leon to Levy. Mrs. Brailey was not in the best position to see or hear what really happened and even if the tape had not been played, her testimony was not so convincing as to change the outcome of the verdict.
For these reasons, we find no merit in defendant's second assignment of error.

ASSIGNMENTS OF ERROR NOS. 3 AND 5
The defendant has combined these issues for argument. In his fifth assignment of error, defendant complains that the trial court erred in not allowing the investigating officer to testify at trial, that, after interviewing the witnesses, he concluded that the defendant's actions were an "immediate reaction". In assignment of error number 3, defendant urges that the trial court erred in failing to order the prosecution to turn over alleged exculpatory evidence of prior inconsistent statements that the defendant's action was an "immediate reaction".
Concerning the alleged exculpatory evidence, the defendant filed a motion for discovery requesting exculpatory evidence. Thereafter, the defendant filed a "Supplemental *563 Brady Request" asking for specific evidence, i.e., any statements by any witness that Gerald Levy reached for the gun, put his hands on the hood of the car where the gun was placed, made a sudden movement or what appeared to be a sudden movement toward the gun, or had a gun on his person or told anyone he had a gun; and, any information tending to indicate the victim was acting in a hostile manner, was intoxicated or that he had made threats or disparaging remarks to the defendant or about defendant's family. In response to this request, the State provided the names of witnesses and some of their statements. The defendant neither objected to the State's response nor requested that the trial judge conduct an in camera inspection of the State's files to see if any exculpatory evidence included therein had been withheld.
On appeal, the defendant complains that the defense was unable to obtain the actual statements made by the State's witnesses, even though they were obviously Brady material since the prosecutor knew the statements were inconsistent with the witnesses' testimony at trial. The alleged inconsistency was the variation in how the State's witnesses described the length of time between the victim banging on the hood of the car, his alleged reaching for the gun and the shooting by defendant. The defendant reasons that if any of the State's witnesses had told the investigating officer the same thing the day after the shooting as that to which they testified at trial, the officer could not have concluded that the shooting was an "immediate reaction", like he did at the bond reduction hearing conducted six months before trial.
A review of the record reveals no objection by the defendant nor a request that the court conduct an in camera inspection of the State's file. As this court noted in State v. Willis, 438 So.2d 605 (La.App. 3rd Cir.1983), if a defendant makes a discovery request and the State has not complied, the defendant must draw this nonproduction to the attention of the trial judge who is able to require production. A failure to object at trial constitutes a waiver of the objection. Id. at p. 610. The prosecution must disclose evidence favorable to the defendants only if it is material to his guilt and if it were suppressed, the evidence would deprive him of a fair trial. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Materiality is shown where there is a reasonable probability that the outcome of the trial would have been different if the evidence had been disclosed. United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
The variations in the descriptions of the shooting as given by the four witnesses do not represent material or exculpatory evidence, but are simply factors going to the weight of the evidence. As will be discussed later, the conclusion of the investigating officer did not necessarily establish inconsistent testimony on the part of the other witnesses. We find no merit in defendant's third assignment of error.
The genesis of defendant's fifth assignment of error occurred in his second bond reduction hearing conducted six months before trial. Although the prosecutor objected to the defendant using the hearing as a back door attempt to obtain discovery not permitted by the Code of Criminal Procedure, the judge allowed the defendant to ask Detective George Williams:
Q. Tell us what the witnesses told you about the time between Mr. Levy banging down on the hood of the car and Mr. Williams picking up the gun.
A. That Mr. Levy banged his fist on the car. Leon picked up the gun and shot him.
Q. And how fast did that happen?
A. Well, none of them specified a time, but immediate reaction.
Q. It was an immediate reaction on Mr. Williams' part?
A. Yes, sir.
At the defendant's trial, counsel for defendant attempted to ask Detective Williams what he concluded about the shooting after interviewing the witnesses. The State objected and after lengthy argument, *564 the court sustained the objection because the officer was not testifying as an expert witness and such testimony would be his opinion drawn from his investigation.
The defendant argues that Detective Williams' testimony would go to the credibility of the State's witnesses who spoke to him shortly after the shooting and then allegedly testified inconsistently at trial.
The defendant's argument lacks merit. The witness was being asked to give his opinion about an event which he did not see, hear, or perceive first-hand. The officer was not testifying as an expert witness. Louisiana Code of Evidence Article 701 does not permit a lay witness to give his opinion or inferences unless it is rationally based upon his own first-hand perceptions. The defendant had the opportunity to cross-examine the State's witnesses as all had testified prior to Detective Williams taking the stand. The trial judge informed counsel for defendant that if he wanted to ask the officer if a witness' testimony in court conflicted with what the witness told the officer after the shooting, it might be relevant. However, the question about the officer's opinion was not relevant.
We find defendant's fifth assignment of error is meritless. The defendant could not ask a non-expert witness to give an opinion. Defendant never inquired whether or not the trial testimony of the State's witnesses conflicted with their statements given after the shooting.

ASSIGNMENT OF ERROR NO. 4
Defendant finally contends that the evidence does not support a verdict of guilty of second degree murder. The defendant raised the defense of justifiable homicide; a claim that the gun accidentally discharged; and, allegations that the victim's provocations were sufficient to reduce the charge of second degree murder to manslaughter.
As this court noted in State v. Sylvester, 438 So.2d 1277, 1281 (La.App. 3rd Cir.1983), writ denied, 444 So.2d 606 (La. 1984), a defendant in a homicide prosecution who asserts that he acted in self-defense does not have the burden of proof on that issue, rather, the State bears the burden of establishing beyond a reasonable doubt that the homicide was not committed in self-defense.
Therefore, in such a case, a Jackson review must inquire whether, after reviewing the evidence presented in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Sylvester, supra, citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and State v. Brown, 414 So.2d 726 (La.1982). That inquiry in this case will focus on whether the defendant or the victim was the aggressor, and whether the evidence negated the claim of self-defense. Two statutes are pertinent to this inquiry, La.R.S. 14:20(1) and La.R.S. 14:21.
La.R.S. 14:20 reads in pertinent part as follows:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; ...
La.R.S. 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
In the present case, the jury found that the State negated defendant's claim of self-defense. It is the role of the fact-finder to weigh the respective credibilities of the witnesses, and the appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983), citing State v. Richardson, 425 So.2d 1228 (La.1983). The question of credibility is within the sound discretion of the trier of fact. The *565 jury's factual determinations are entitled to great weight and should not be disturbed unless contrary to the evidence. State v. Klar, 400 So.2d 610 (La.1981), citing State v. Cobbs, 350 So.2d 168 (La.1977).
Although some evidence was presented that the victim reached for the defendant's gun while it was on the hood of the car, other evidence directly contradicted this fact. Also, the defendant was the aggressor in two earlier encounters, twice chasing the unarmed victim while armed with a dangerous weapon. The fact that the defendant stopped chasing the victim and stopped at the car to rearrange his clothing did not necessarily establish that he was withdrawing from the conflict in good faith. Nor could the victim's act of banging his hands on the hood of the car create a reasonable belief in the defendant that he was in imminent danger of losing his life. Additionally, once defendant again took physical possession of the revolver, any theretofore perceived danger had passed. At that point, the defendant was armed with a .357 magnum revolver and was separated from an unarmed alleged provocateur by a car. We fail to see how, at that point, any reasonable man could have concluded that killing Levy was necessary to save himself. The jury properly rejected the defendant's claim of justifiable homicide.
The defendant also claimed that the victim's actions and words prior to the shooting were sufficient provocation to reduce his crime to manslaughter, a violation of La.R.S. 14:31. In order to reduce a first or second degree murder to manslaughter, the homicide must be committed in such passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation will not reduce a homicide to manslaughter if the trier of fact finds that the defendant's blood had actually cooled, or that an average person's blood would have cooled at the time the homicide was committed. State v. Lee, 498 So.2d 1177 (La.App. 3rd Cir.1986), writ denied, 504 So.2d 874 (La.1987). See also, State v. Ducksworth, 496 So.2d 624, 630 (La.App. 1st Cir.1986). The defendant and the victim had exchanged words both earlier in the day prior to the shooting, and immediately before the defendant shot the victim. However, nothing was done which could be considered sufficient provocation. The act of the victim banging his hands on the hood of the car certainly is not sufficient an act to deprive an average person of his self-control; nor would the victim's alleged name-calling be sufficient provocation. Further, there was evidence that defendant left the first altercation to retrieve a gun and that he stated he was going to "kill me a nigger", showing the defendant's state of mind prior to the second altercation. The rejection of the lesser responsive verdict of manslaughter is supported by the evidence.
Finally, the defendant argues that the gun accidently discharged. The State's expert witness, David Epstein, testified that the amount of force necessary to pull the trigger was seven pounds with the hammer cocked and that fifteen pounds was necessary to effectuate firing in the double action mode. He also testified that the gun could discharge only if the trigger was pulled with sufficient force. The jury finding that the defendant acted with the specific intent to kill also acts as a rejection of the defendant's claim of accidental discharge. See State v. Delahoussaye, 479 So.2d 1074 (La.App. 3rd Cir.1985); and State v. Magee, 487 So.2d 1233 (La.App. 3rd Cir.1986), writ denied, 488 So.2d 1018 (La.1986).
After considering the evidence presented, the jury concluded that the defendant acted with specific intent when he killed Gerald Levy. Their determination of the credibilities of the witnesses is not clearly contrary to the evidence.

CONCLUSION
For the reasons stated, the defendant's conviction and the sentence imposed are affirmed. The trial court is ordered to comply with La.C.Cr.P. art. 930.8 C by informing the defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within *566 ten days of the rendition of this opinion and to file in the record of these proceedings written proof that the defendant received such notice.
AFFIRMED WITH INSTRUCTIONS.